IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

THOMAS R. JONES,

                    Petitioner,                              **8:21CV249**

            vs.

ROB JEFFREYS,                                        **MEMORANDUM AND ORDER**

                    Respondent.

The matter is before the Court on a motion for evidentiary hearing (the "Motion"), Filing No. 44, filed by Petitioner Thomas R. Jones ("Petitioner"), addressing Claims Two, Three, Four, Seven, and Eight of the Amended Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2254, Filing No. 43.  Specifically, Petitioner seeks an evidentiary hearing to further develop facts relating to all five claims (and alternatively to excuse the procedural default of any of these claims), which if proven to be true, would establish ineffective assistance of trial counsel at the investigation, plea, and sentencing stages of Petitioner's case.  Filing No. 43; Filing No. 60 at 2–3.

For the reasons that follow, the Motion is denied without prejudice to reassertion in accordance with this Memorandum and Order.

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

### A. Conviction and Sentence

In July of 2011, Petitioner, represented by attorney Matt Kahler ("Kahler"), pleaded no contest and was found guilty of First Degree Assault, Second Degree Assault, and Use of a Deadly Weapon to Commit a Felony.  Filing No. 16-6 at 1, 2, 14, 18.  The state district court sentenced Petitioner to terms of 20 to 20 years' imprisonment on each of the assault

convictions and 10 to 10 years' imprisonment on the weapon conviction, with all sentences to be served consecutively.  *Id.* at 2.

## B. Direct Appeal

With the assistance of new counsel Jason E. Troia ("Troia"), Petitioner filed a direct appeal challenging his sentences and raising claims of ineffective assistance of trial counsel Kahler (the "Direct Appeal").  Filing No. 40-7; *see also* Filing No. 16-6 at 1. Specifically, Petitioner raised the following claims: (1) the district court's pronouncement of sentence prior to excusing the parties was different than the written sentence contained in the mittimus and sentencing order, (2) the trial court abused its discretion by ordering consecutive sentences for the two assault convictions, and (3) ineffective assistance of trial counsel alleging Kahler pressured him into entering into a plea agreement as opposed to going to trial.  Filing No. 40-7 at 11.

The following is the entire argument supporting Petitioner's ineffective assistance claims from his Direct Appeal:

> [Petitioner] received ineffective assistance of counsel because his counsel pressured him to enter into a plea agreement as opposed to a trial. [Petitioner] was told to consider things, such as the District Court's personal plans that it would rather be tending to, in making the decision.  The end result was that [Petitioner] entered a plea that was made involuntarily, unintelligently and without understanding.
> . . .
>
> A Defendant has the burden to show that (1) counsel performed deficiently- that is, counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area-and (2) this deficient performance actually prejudiced him in making his defense.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 674 (1984).
>
> In the present case, [Petitioner's] trial counsel pressured him to enter into the plea agreement that resulted in [Petitioner] entering his plea involuntarily, unintelligently, and without proper understanding.  Part of the pressure was due to the last-minute urging by his counsel of [Petitioner] to

> enter into a plea on the eve of his trial. [Petitioner's] counsel indicated to him that his sentence would be impacted if [Petitioner] maintained a desire to go to trial due to the District Court'[s] personal plans that the District Court would rather be doing than presiding over his trial. [Petitioner's] trial counsel also indicated to him that he would receive a sentence as if he was a habitual criminal if he proceeded to trial and lost. [Petitioner] was not habitual eligible at the time. [Petitioner] indicated to the Court at the time of sentencing that he had reservations about his plea stating that his plea was "somewhat ill-advised. It was five minutes prior to another hearing that we were scheduled to have. I had, I'll say, five minutes to decide on this life-changing experience as well as to a degree I feel I was somewhat ill-informed." (B 16:13–16). Had he not been pressured to enter into the plea agreement, he would not have done so.

Filing No. 40-7 at 11, 16.

On June 12, 2012, the Nebraska Court of Appeals affirmed Petitioner's conviction and sentence, denying all claims challenging Petitioner's sentence but declined to address the ineffective assistance of counsel claim, finding the record was insufficient to perform a review. Filing No. 40-4 at 5–6.

Petitioner timely filed a petition for further review on July 12, 2012 (the "Direct Appeal PFR"), also with the assistance of Troia. Filing No. 40-9. In his Direct Appeal PFR, Petitioner restated his claims brought to the state appellate court and agreed that the "record was insufficient for review" of his ineffective assistance of counsel claim. Id. at 2–4. The Direct Appeal PFR was denied by the Nebraska Supreme Court on August 30, 2012. Filing No. 16-2 at 4.

**C. Postconviction**

**1. The postconviction motion (the "PCM")**

Petitioner timely filed his PCM on August 23, 2013. Filing No. 16-5 at 4–32. In the PCM Petitioner raised the following two general assignments of error: (1) ineffective assistance of direct appeal counsel Troia for failure to raise claims of ineffective

assistance of trial counsel Kahler and (2) trial court error for issuing what Petitioner argued was an unconstitutional determinate sentence on each of the three counts against him. *Id.* at 7, 18. The ineffective assistance of trial counsel claims Petitioner alleged should have, but were not, raised by Troia in the Direct Appeal[1] were Kahler's failure to: investigate the consequences of entering a plea of nolo contendre, properly advise Petitioner of the consequences of entering a plea of nolo contendre, and properly advise Petitioner regarding sentencing as Kahler advised him to "expect" a concurrent sentence on the first two counts against him. *Id.* at 7–8. Later in his brief, Petitioner also argued that Kahler erred by failing to object to Petitioner's sentences as unconstitutional under Nebraska law. *Id.* at 27.

In the majority of the body of the PCM, Petitioner addressed Kahler's allegedly erroneous advice which resulted in Petitioner entering a nolo contendre plea. *E.g. Id.* at 10 (arguing Kahler's advice robbed him of "the awareness of the alternatives available to him, and that particular lack of awareness undermine[d] the reliability of the plea and render[ed] it fundamentally unfair."). In support, Petitioner argued that he would not have agreed to a plea but for Kahler's erroneous and misleading advice, but he did so because: (1) Kahler did not inform Petitioner of the actual sentencing risks inherent in a nolo contendre plea, (2) Kahler erroneously informed Petitioner that if he did not accept the

---

[1] Specifically, Petitioner raised the following imbedded claim of ineffective assistance of trial counsel Kahler via a claim of ineffective assistance of appellate counsel Troia:

> [Petitioner] was deprived of the effective assistance of counsel when [Troia] failed to assign numerous errors made throughout the criminal prosecution by defense counsel and the court, where such errors caused substantial prejudice to [Petitioner] and by any objectively reasonable standard amounted to deficient performance constituting ineffective assistance of counsel.

Filing No. 16-5 at 7.

plea he would (or could) be charged and sentenced as a habitual offender, because the state court could use the first two felony convictions to enhance the third felony conviction, and that the court would be inclined to do so for wasting the court's time with a trial,[2] and (3) Kahler erroneously informed Petitioner that the law required a concurrent sentence structure on the first two counts because they occurred at the same time.[3]  *Id.* at 7–8.

He also alleged that Kahler failed to negotiate a specific sentencing recommendation to the Court in conjunction with the plea, and that Kahler failed to withdraw the plea after learning that Petitioner "became aware of the misadvice."  *Id.* at 12, 14.  Petitioner further noted that he expressly informed the court prior to sentencing that he had been misadvised by Kahler but nothing happened.  *Id.* at 8, 12.

Petitioner also raised the following ineffective assistance of counsel claims relating to Kahler's pre-trial actions which he alleged constituted deficient performance affecting substantial rights under the Fifth, Sixth, and Fourteenth Amendments of the Constitution: (1) withholding of exculpatory evidence that could have formed the basis of a viable defense, (2) refusal to investigate information surrounding the charged offenses, (3) refusal to depose witnesses, (4) refusal to consult with Petitioner and discuss strategy,

---

[2] Petitioner contends he was not eligible as a habitual offender at the time.  *Id.*

[3] Later in his brief, Petitioner appears to reiterate his prior arguments, again alleging that:

> [Petitioner's] counsel failed to be truthful and forthright with regard to the State's intent, and actual legal grounds, to amend the information charging him to include habitual offender allegations. [Trial] counsel further misadvised [Petitioner] on the discretionary sentencing structure available to the Court regarding particular offenses, and, in fact, [trial] counsel stated to [Petitioner] that the Court had to make his sentences on the first two counts concurrent with one another. Because the Judge failed to advise [Petitioner], during Balkanization, of the potential consecutive sentence structure, and by extension the possible range of the sentence, and [trial] counsel failed to object to the Courts error in that respect, the misadvice had an obvious detrimental effect on [Petitioner's] ability to make a knowing, informed decision on whether to accept the plea offer causing him substantial prejudice.

*Id.* at 11.

and (5) failure to prepare for trial. *Id.* at 15. Petitioner argued that, but for trial counsel's errors, it was "reasonably likely" he would have rejected the nolo contendre plea he accepted, and the outcome of the proceeding would have been more favorable to him. *Id.* at 12, 15.

Petitioner also argued that direct appeal counsel Troia failed to raise two trial court error claims in the Direct Appeal: "reversible error in imposing determinate sentences contrary to state statute and state constitutional provision . . . [and] reversible error in imposing sentences in violation of due process of law where Court erred in failing to recognize its discretion in sentencing [Petitioner]." *Id.* at 18. Regarding the sentencing error claim, Petitioner argued that "by imposing an identical minimum and maximum term, [Petitioner] will never become parole eligible," denying the parole board the opportunity to exercise its authority in violation of the Nebraska Constitution. *Id.* at 25–26.

And finally, because the state appellate court declined to assess his ineffective assistance of counsel claims on direct appeal due to lack of an adequate record, Petitioner also sought an evidentiary hearing to develop those claims. *Id.* at 31–32.

**2. The PCM denial**

On February 4, 2014, the district court denied the PCM (the "PCM Denial"), finding in relevant part:

> The Court finds that the verified petition for post conviction relief alleges only conclusions of fact and law and that the records and files in the case affirmatively show that [Petitioner] is entitled to no relief. Also, the Court finds that the claims set forth in the motion where [sic] known or knowable to the [Petitioner] at the time of his direct appeal and, therefore, these claims are procedurally barred.

Filing No. 40-19 at 35.

6

### 3. The PCM appeal

On July 10, 2014, Petitioner, again proceeding pro se, appealed the PCM Denial alleging ineffective assistance of counsel and that he received an unlawful sentence (the "PCM Appeal"). *See* Filing No. 16-3; Filing No. 40-11. Petitioner raised four assignments of error, the following two of which are relevant here: (1) The lower court committed reversible error by failing to find that Petitioner was deprived of the effective assistance of direct appellate counsel Troia when Troia failed to assign numerous trial counsel and trial court errors in the Direct Appeal, and (2) the lower court abused its discretion when holding Petitioner responsible for claims Troia should have raised, but did not.[4] Filing No. 40-11 at 3–4. Petitioner argued that the state district court's failure to grant him an evidentiary hearing denied him the right to show Kahler's performance was deficient, and that the deficient performance prejudiced him. *Id.* at 23. He further alleged that the state district court's PCM Denial failed to allow him to conduct a deposition of Kahler, denying him the right to "fully adjudicate his claims in the postconviction proceeding" including his ineffective assistance of counsel "layered" claims. *Id.* at 26, 32.

In support of his ineffective assistance of trial counsel claims, Petitioner alleged his nolo contendere plea was involuntary and unlawfully induced by Kahler's erroneous and misleading advice as he was not informed of the sentencing risks of a nolo contendere plea. *Id.* at 25. Petitioner contended Kahler advised him to plead no contest to one count of assault in the first degree, one count of assault in the second degree, and one count of use of a deadly weapon to commit a felony, because:

---

[4] The second assignment of error listed here is assignment of error number four in the PCM Appeal. *See* Filing No. 40-11 at 50.

> if he persisted in his desire to go to trial, and lost, the County Attorney would amend the information and charge him as a habitual offender . . . that the District Court had better things to be doing than residing over his trial, and, when it came time for sentencing, the District court would greatly enhance his sentence as a habitual offender for wasting it's [sic] time.

*Id.* at 25–26.   Petitioner argued that Troia failed to adequately raise his claim against Kahler relating to Kahler's advice and involvement in his acceptance of the plea. *Id.* at 32–35, 50–53.

Petitioner also contended Kahler erroneously explained that the state could use the first two felony convictions to enhance the third, substantially influencing Petitioner's decision to take the plea, and that Kahler knew or should have known his advice was incorrect. *Id.* at 26.  And finally, Petitioner reiterated his claim that he expressly stated to the state district court at sentencing that he had been misadvised by Kahler regarding the consequences of accepting the nolo contendre plea but that nothing was done in response. *Id.* at 28–31.

### 4. The partial remand

On April 21, 2015, the Nebraska Court of Appeals affirmed in part and reversed and remanded in part the PCM Denial, finding that Petitioner "sufficiently raised assertions concerning the effectiveness of his trial counsel and that the district court erred in denying an evidentiary hearing" but that there were no merits to Petitioner's claims regarding his sentence (the "Partial Remand Order"). Filing No. 16-7 at 1.  In addressing his ineffective assistance of appellate counsel claims the state appellate court made the following findings:

> With respect to his appellate counsel, [Petitioner] argues in his brief on appeal that the district court erred by failing to find ineffective assistance "when appellate counsel failed to assign numerous errors committed by trial counsel throughout the criminal prosecution."   Brief for Appellant at 18.

8

[Petitioner] presents more than 10 pages of argument concerning trial counsel's advice to Jones to enter no contest pleas.

To the extent [Petitioner] is asserting on appeal that his appellate counsel was ineffective for failing to raise on direct appeal assertions that trial counsel had been ineffective for providing incorrect advice related to [Petitioner's] plea, the argument on appeal is without merit. In our prior opinion affirming Jones' conviction and sentences, we specifically discussed [Petitioner's] appellate counsel's assertions that [Petitioner's] trial counsel had been ineffective for allegedly providing incorrect advice related to the plea. *See State v. Jones, supra.* We declined to review that assertion concerning trial counsel because the record was insufficient. *Id.* Appellate counsel could not have been ineffective for failing to raise an issue that appellate counsel clearly did raise. *See State v. Nolan,* 283 Neb. 50, 807 N.W.2d 520 (2012).

Accordingly, to the extent [Petitioner's] motion for postconviction relief asserted that his appellate counsel was ineffective for failing to raise issues on direct appeal, that assertion lacks merit. The district court did not err in refusing to grant an evidentiary hearing regarding the assertions made by [Petitioner] about his appellate counsel.

*Id.* at 3.

With respect to his ineffective assistance of trial counsel claims, the court made

the following findings:

[Petitioner] also included in his motion for postconviction relief a variety of assertions about his trial counsel. In denying an evidentiary hearing, the district court held that [Petitioner's] motion alleged only conclusions, that the records and files affirmatively showed no entitlement to relief, and that his claims were known or knowable at the time of his direct appeal and were, therefore, procedurally barred. We disagree.

[Petitioner] presented his motion for postconviction relief pro se. It is inartfully presented. Nonetheless, we conclude that a reasonable reading of the motion includes assertions that his trial counsel was ineffective in ways that were raised by his appellate counsel on direct appeal. On direct appeal, we specifically declined to address claims on the basis of the record then being insufficient. [Petitioner] specifically noted in his motion that he "seeks to expand the record through postconviction in order that the court can fairly and 'meaningfully assess' the ineffective assistance claims."

An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved,

9

constitute an infringement of the movant's rights under the Nebraska or federal Constitutions, causing the judgment against the movant to be void or voidable. *State v. Cook*, 290 Neb. 381, —— N.W.2d —— (2015). An evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law. *State v. Cook, supra.*

Contrary to the district court's conclusion, [Petitioner's] motion did not allege only conclusions of fact and law. [Petitioner] included specific assertions concerning his trial counsel, what he believed to constitute deficient performance, and how or why that performance resulted in him entering a plea instead of insisting on going to trial.

The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity. *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014). A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *Id*.

In his direct appeal we specifically recognized that he raised assertions concerning the effectiveness of his trial counsel concerning counsel's advice that [Petitioner] enter into a plea agreement. We concluded that the record was insufficient and declined to address the merits of those claims. [Petitioner] did not waive these assertions because they were known or knowable at the time of his direct appeal—he raised them as he needed to, the record was insufficient, and he now raises them in postconviction as he needed to.

The State has acknowledged on appeal that if this court concludes that [Petitioner] has sufficiently, although inartfully, raised issues concerning the effectiveness of his trial counsel, then "an evidentiary hearing would be required." Brief for Appellee at 7. We reverse the district court's conclusion that [Petitioner] did not sufficiently raise these issues or that they were procedurally barred, and we remand for further proceedings.

Id. at 3–4.

Petitioner did not file a petition for further review addressing any of his claims that were not remanded in the Partial Remand Order. *See* Filing No. 60 at 8–11.

10

### 5. District court proceedings on remand

#### a. *Pre-evidentiary hearing motions*

On December 1, 2016, the state district court issued an order appointing Greg Pivovar ("Pivovar"), as counsel to represent Petitioner for the evidentiary hearing ordered in the Partial Remand Order "on a portion of [Petitioner's] postconviction motion." Filing No. 40-22 at 222. On January 31, 2017, Petitioner, pro se and without the assistance of Pivovar, filed a motion for leave to amend the PCM, due to the state appellate court's discussion of the PCM as "inartfully presented," and due to the PCM having been filed by Petitioner pro se (the "Motion to Amend"). *Id.* at 291. Specifically, Petitioner submitted the Motion to Amend to "provide the Court with a more concise and definitive statement of the facts or cause of action on the defendant's claim of ineffective assistance of trial counsel". *Id.*

In conjunction with the Motion to Amend, Petitioner also filed an Amended Verified Petition for Postconviction Relief (the "Proposed Amended PCM"). *Id.* at 225–88, 294.

In the Proposed Amended PCM Petitioner alleged his trial counsel:

(1) failed to investigate witness James Henley, request D.N.A. analysis, or fingerprint comparison on firearm retrieved by Omaha Police; (2) failed to provide documents, transcripts, video footage to allow petitioner to prepare adequate defense for trial; (3) lacked adversarial challenging and inadequate arguments for identification suppression hearing; (4) failed to challenge false statements made by The States witnesses during identification suppression hearing; (5) never notified the [P]etitioner that he could appeal the ruling of the District Court denying suppression to a higher court; (6) told the petitioner to stop attending law library while in Douglas County Corrections awaiting trial; (7) told the [P]etitioner's fiancé the [P]etitioner was guilty of crimes alleged; (8) failed to investigate [P]etitioner['s] alibi for the time of the crimes in question; (9) scheduled court dates for the [P]etitioner to change his plea without any request being made by the [P]etitioner; (10) had inadequate knowledge of the State statutes and the application thereof; (11) misrepresented the actual amended information that was filed against [P]etitioner on July 25, 2011 to the

11

[P]etitioner and his fiance; (12) told the [P]etitioner the District Court did not want to preside over his trial the week of August 1, 2011 and the District Court "would not forget" the [P]etitioner after his plea was accepted by the District Court and during sentencing; (13) gave [P]etitioner erroneous advice regarding habitual criminal enhancements; (14) gave the [P]etitioner erroneous advice regarding direct consequences and penalties the [P]etitioner was subject to due to his No Contest plea; (15) failed to motion for the District Court's recusal from the [P]etitioner['s case; (16) failed to object to the State's misleading factual basis during plea proceedings[;] (17) allowed the [P]etitioner to plead No Contest to a crime where the statutory requirements were not satisfied to support the conviction thereof; (18) failed to properly investigate injury to D'Anthony Betts; (19) made false statements to the District Court regarding pre-sentence investigation meeting between the [P]etitioner and the probation officer that conducted the interview of the [P]etitioner; (20) failed to object or clarify when the District Court sentenced [P]etitioner under a mistake of law; (21) allowed the District Court and the prosecution to communicate in ex-parte communication regarding the sentence of the [P]etitioner after the sentencing hearing was adjourned and the [P]etitioner had exited the courtroom.

*Id.* at 227–29.

On July 10, 2018, a hearing was held on the Motion to Amend, which was overruled and denied by the state district court on July 12, 2018. *Id.* at 298.

On July 20, 2018, Petitioner filed a motion to alter or amend the judgment on the Motion to Amend (the "Motion to Alter Judgment"). *Id.* at 299–301. Petitioner argued that the Motion to Amend was denied due to an erroneous finding that the PCM was unable to be amended as the court was confined to the mandate of the state appellate court in the Partial Remand Order. *Id.* at 299. Petitioner argued that the purpose of amending the PCM was not to expand the petition or otherwise go around the mandate but was instead filed to "cure deficiencies mentioned by the [state appellate court], on the . . . ineffective assistance of counsel issue." *Id.* at 300. Petitioner argued that while under Nebraska law as set forth in *State v. Henk*, 299 Neb. 586 (2018), he could not bring new claims, that he was not precluded from refining issues within the mandate issued by the

State Appellate Court. *Id.* The state district court summarily denied the Motion to Alter Judgment, finding amendment unavailable as the court was "confined to the mandate" in the Partial Remand Order. *Id.* at 303.

On March 13, 2019, the district court scheduled an evidentiary hearing for additional testimony on Petitioner's PCM for May 20, 2019, at 11:00 a.m. *Id.* at 315.

On May 13, 2019, Petitioner sought to expand the record at the evidentiary hearing to including the following: (1) a transcript from a December 16, 2010, identification suppression hearing, (2) a transport order for Petitioner's transportation from Douglas County Corrections to the Douglas County Courthouse for the month of July 2011, (3) slips signed by Petitioner at Douglas County Corrections for the month of July 2011 showing that Petitioner refused to be transported from Douglas County Corrections to the Douglas County Courthouse, and (4) an affidavit of potential alibi witness Derin Greene. *Id.* at 327–28.

On May 20, 2019, Petitioner, pro se, filed a motion seeking to continue the evidentiary hearing and seeking a probable cause hearing, arguing that he had been unable to reach Pivovar, but believed that Pivovar had failed to depose all necessary individuals. *Id.* at 330–32.

On July 10, 2019, Petitioner, again pro se, sought to suppress the Kahler deposition, arguing it was inaccurate and untruthful. *Id.* at 337.

### b. *The evidentiary hearing*

An evidentiary hearing was held on the PCM on August 19, 2019 (the "Evidentiary Hearing"), where Petitioner offered into evidence his own deposition as well as the

deposition of trial counsel Kahler and the live testimony of Derin Green.  Filing No. 16-8 at 2.  The state offered deposition testimony of the victims in the case.  Id.

### c. *The remanded PCM denial*

Following the evidentiary hearing, on February 3, 2020, the district court entered an order denying Petitioner's PCM (the "Remanded PCM Denial").  Filing No. 40-22 at 349–54.  Prior to addressing the issues before the court, the court noted that the Partial Remand Order was less than clear as to what claims were remanded, providing "no further insight as to what specific allegations warranted an evidentiary hearing" aside from a paragraph concluding that Petitioner "inartfully" raised multiple claims of ineffective assistance of trial counsel which were also raised in the Direct Appeal and warranted further development.  Id. at 350 (citing State v. Jones, 2015 WL 1858863, *3 (Neb. Ct. App. 2015).  The court then further noted it also found Petitioner's ineffective assistance of counsel claims as "difficult to discern," ultimately determining the court was required to address ineffective assistance of trial counsel claims of "promises related to sentencing" and "overall failures in investigation."  Id. at 351–53.

In its denial the court found that Kahler was a more credible witness, therefore, crediting more weight to Kahler's testimony that he had not made Petitioner any promises regarding his sentences (as opposed to Petitioner's contention that Kahler did make such promises).  The court further found that Kahler had made reasonable investigations before advising Petitioner to enter his plea, that Petitioner had failed to allege what additional evidence Kahler should have gathered, and, if the evidence Kahler should have gathered would have been exculpatory, how the "exculpatory" evidence would have been found or how it would have impacted Petitioner's decision to enter a plea rather than go

14

to trial.  Ultimately, in light of all of these findings and the strength of the evidence presented against Petitioner in securing his conviction, the court found that Petitioner had failed to prove prejudice.  *Id.* at 351–54.

### 6.  The Remanded PCM Appeal

Petitioner timely appealed the Remanded PCM Denial on February 28, 2020 (the "Remanded PCM Appeal"), *id.* at 356, and was appointed Justin Quinn ("Quinn") as counsel, *id.* at 374.  In his brief in support, with the assistance of Quinn, Petitioner argued that the state district court:  (1) abused its discretion in denying his Motion to Amend resulting in his inability to file his Proposed Amended PCM, (2) erred by failing to find trial counsel was deficient and that "but for those deficiencies [Petitioner] would not have accepted the plea agreement," and (3) Pivovar did not provide effective assistance postconviction.  Filing No. 40-13 at 7.

In support of his argument that the trial court erred in denying his Motion to Amend and Motion to Alter Judgment, Petitioner pointed out that the state appellate court in its Partial Remand Order remarked the PCM was "inartful" and that by amending he could clarify his claims in the PCM.  *Id.* at 9–10.  In support of his argument addressing his ineffective assistance of trial counsel claims, Petitioner appeared to argue that the state district court's finding that Kahler's performance was not deficient was based on what Petitioner contended was an erroneous conclusion that Kahler was more credible than Petitioner.  *Id.* at 12–25.  Petitioner argued that the state district court failed to consider all the ways Kahler failed to adequately prepare for and investigate Petitioner's case, including failing to provide Petitioner with proof that the victim's depositions were taken, failing to depose Henley and Green, failing to keep Petitioner informed as to the status of

his case, failing to have DNA retrieved, failing to have medical exams performed on the victims, failing to inform Petitioner that going to trial would allow him to appeal the denial of the motion to suppress, failing to be forthcoming about the amended information, failing to give Petitioner adequate time to make a decision about making a plea, failing to accurately inform Petitioner of the consequences of making a plea, and erroneously promising Petitioner a sentence reduction if he entered a plea. *Id.* at 17.

In support of his ineffective assistance of post-conviction counsel claim, Petitioner submitted that Pivovar failed to: ensure that a record was made of the Motion to Amend pleadings, depose all parties Petitioner sought to depose including the alleged victims and Henley, obtain transport records from Douglas County Corrections to support Petitioner's argument (and contradict Kahler's) that Petitioner was ill prepared and was hesitant about entering a plea, question Green about being an alibi witness for Petitioner (despite her affidavit that claims Petitioner was with Green at the time the crimes for which Petitioner was convicted occurred), pursue Kahler's deficiencies at sentencing, and communicate with Petitioner during the remanded proceedings. *Id.* at 25–27.

On January 5, 2021, the Nebraska Court of Appeals affirmed the state district court's judgment, finding that the district court correctly found that it was confined to the appellate court's mandate, that the district court did not commit clear error in finding that Kahler's testimony regarding the circumstances surrounding Petitioner's plea entry was more credible than Petitioner's, and that Petitioner's claims regarding ineffective assistance of postconviction counsel were without merit as there is no constitutional right to effective assistance of appellate counsel in postconviction proceedings. Filing No. 16-8. In addressing the remainder of Petitioner's claims, the appellate found the following:

16

[Petitioner] assigns that his appointed postconviction counsel did not provide effective assistance as required by Neb. Rev. Stat. § 29-3004 (Reissue 2016). [Petitioner] argues that his postconviction counsel "failed to act as a competent attorney in several regards." Brief for appellant at 26. Reordered, [Petitioner] alleges that his postconviction counsel was ineffective for failing to: (1) depose the victims and a witness in this case; (2) obtain transport records from corrections that would show [Petitioner] refused to attend a scheduled plea hearing; (3) question [Petitioner's] fiance about potential alibi evidence; (4) make postconviction arguments related to trial counsel's performance at [Petitioner's] sentencing hearing; (5) make a record of the hearing on [Petitioner's] motion to file an amended motion for postconviction relief; and (6) "engage in basic communication" with [Petitioner]. *Id.* at 26-27.

There is no constitutional right to effective assistance of counsel at postconviction proceedings. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). However, [Petitioner] cites to § 29-3004, which states that "[t]he district court may appoint not to exceed two attorneys to represent the prisoners in all [postconviction] proceedings" and that "[t]he attorney or attorneys shall be competent and shall provide effective counsel." The Supreme Court has not explicitly decided whether this section provides for a statutory right to competent and effective postconviction counsel that may be enforced on appeal from a postconviction proceeding. *See State v. McGuire, supra.*

Assuming without deciding that there is such an enforceable statutory right to effective postconviction counsel, we determine that [Petitioner] has failed to prove that he is entitled to relief.

On remand, the mandate from this court in [the Partial Remand Order] directed the district court to hold an evidentiary hearing on the sole issue of whether Jones' trial counsel had rendered ineffective assistance in advising Jones to enter a plea. Therefore, [Petitioner's] postconviction counsel could not have been ineffective for failing to (1) conduct depositions of the victims and witnesses; (2) investigate corrections transport records; (3) investigate alibi evidence; or (4) make postconviction arguments related to trial counsel's performance at the sentencing hearing. These issues are all beyond the scope of the mandate, and on appeal, [Petitioner] does not specify how these factors relate to the relevant issue--that is, whether trial counsel pressured Jones or misadvised him in order to induce him to enter a plea. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018).

[Petitioner's] fifth argument, that his postconviction counsel was ineffective for failing to make a record of the hearing on his motion to file an amended

postconviction motion, also fails. As we discuss above, the district court correctly found that it was limited by this court's mandate on remand and did not abuse its discretion in denying [Petitioner's] motion to amend. A transcript of the hearing on [Petitioner's] motion would not have altered our analysis. We conclude that [Petitioner] cannot prove prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), with respect to this issue.

Lastly, [Petitioner] argues that his postconviction counsel failed to communicate with him, but this argument consists of a single sentence and the conclusory allegation that counsel's conduct was deficient. This argument is too vague and lacking in specificity to establish either deficient performance or prejudice under *Strickland*.

Accordingly, we conclude that even assuming a statutory right to effective assistance of counsel under § 29-3004 exists, [Petitioner's] arguments fail to show that he would be entitled to relief.

*Id.* at 6–7.

### 7. The petition for further review

On February 2, 2021, Petitioner filed a petition for further review with the Supreme Court of Nebraska (the "PFR"), where he raised the following errors:

I. The Court of Appeals incorrectly decided that the trial court did not abuse its discretion in preventing the [Petitioner] from Amending his pleadings.

II. The Court of Appeals incorrectly decided that [Petitioner's] trial counsel was not ineffective.

III. The Court of Appeals incorrectly decided that [Petitioner's] Post-Conviction counsel was not ineffective.

Filing No. 40-16 at 2.

Specifically, in relation to his ineffective assistance of trial counsel claim, Petitioner argued that the district court erred in "assigning any credibility to [trial counsel's] testimony."[5]  *Id.* at 5.   Then, he contended that the lower courts had failed to seriously

---

[5] Petitioner also alleged that a review of the jail transport records would have shown that twice Petitioner refused to attend court for a scheduled plea, supporting his position that he was not inclined to plead guilty.  Filing No. 40-16 at 9.

18

consider any of the following deficiencies of trial counsel: (1) failure to pursue an alibi defense involving witness Greene, (2) failure to take the deposition of Henley, (3) failure to obtain DNA evidence from the firearm, (4) failure to obtain medical reports regarding the nature of the victim's injuries as a possible defense, (5) failure to provide Petitioner with the order on the motion to suppress, (6) failure to advise Petitioner that he would be able to challenge the identification testimony if he proceeded to trial but not if his plea was accepted, (7) instructing Petitioner to discontinue going to the law library and to stop attempting to educate himself about the law applicable to him and his case, (8) failure to spend adequate time with Petitioner to properly inform Petitioner of his rights and options, (9) failure to adequately discuss Petitioner's potential plea, especially in light of Petitioner's refusals to attend multiple change of plea hearings, (10) failure to advise Petitioner that the "use of a firearm" charge carried a mandatory minimum of five years and failure to advise him of the $25,000 fine associated with the charge of assault in the second degree, (11) improperly advising Petitioner that if he did not plead guilty Petitioner would be eligible to be sentenced as a habitual criminal, and (12) improperly advising Petitioner that if he pleaded guilty he would receive a lighter sentence and that the sentence on the assault charges would run concurrently with other charges. *Id.* at 7–8.

Petitioner also clarified that the court of appeals, in denying his ineffective assistance of postconviction counsel claim, erred in doing so as it misread Petitioner's ineffective assistance of postconviction counsel claim. *Id.* at 9–11. Petitioner argued that the appellate court mistakenly read his claim as alleging that postconviction counsel Pivovar was ineffective for failing to: (1) conduct depositions of the victims and witnesses; (2) investigate corrections transport records; (3) investigate alibi evidence; or (4) make

postconviction arguments related to trial counsel's performance at the sentencing hearing. *Id.* at 9. Instead, Petitioner clarified that the claim he raised in the Remanded PCM Appeal was an ineffective assistance of postconviction counsel claim against Pivovar for his failure to perform the depositions and investigations which trial counsel Kahler failed to undertake. *Id.*

In support Petitioner explained that the state appellate court "misse[d] the entire scope of the argument that [Petitioner] was making, that his trial counsel[']s deficiencies all added up to cause [Petitioner] to enter a plea when he would not otherwise have done so" and that these claims were all part of this imbedded claim. *Id.* He reiterated that the overall lack of care Kahler took generally in his representation of Petitioner included his claims that Kahler: failed to conduct the deposition of Green as an alibi witness, failed to properly investigate Petitioner's case resulting in advice to plead guilty which was poorly informed (and that the lack of evidence contradicts trial counsel's advice), and failed to correct the trial judge at sentencing (presumably regarding the concurrent sentences). *Id.* And finally, Petitioner contended that Pivovar failed to maintain contact with Petitioner "to such a degree that it prevented him from effectively presenting his [PCM]." *Id.* at 10.

### 8. The PFR denial

The Nebraska Supreme Court denied the PFR on March 1, 2021, and the case was mandated on March 15, 2021. *See* Filing No. 40-3 at 4.

## D.  Federal Habeas Proceedings

Petitioner, who is incarcerated at the Nebraska State Penitentiary, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 which was signed and

dated June 6, 2021, and received by this court on July 7, 2021 (the "Petition"). Filing No. 1.

On September 21, 2021, Respondent filed a motion for summary judgment and brief in support raising the sole issue that the Petition was barred by the statute of limitations and was therefore untimely. *See* Filing Nos. 15 and 17. The summary judgment motion was denied and Petitioner's motion for evidentiary hearing on the timeliness issue was granted, and the Federal Public Defender was appointed to represent Petitioner in this matter. Filing No. 31. The timeliness issue was later resolved by the parties via joint stipulation where Respondent effectively withdrew his timeliness argument, Filing No. 34, and a new progression order was entered, Filing No. 36, which was amended the following day, setting a new briefing schedule for the parties, Filing No. 37.

Petitioner then, with the assistance of his current appointed counsel, filed an Amended Petition, Filing No. 43, and the Motion currently at issue before this Court, Filing No. 44. In the Amended Petition, Petitioner raises the following claims:

Claim One:    [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel at trial when, in order to induce a plea agreement, trial counsel Matthew Kahler provided inaccurate information regarding strength of the evidence against [Petitioner], the statutory penalties for the charges, the applicability of the habitual offender enhancement, and the sentence [Petitioner] would receive if he accepted a plea offer.

Claim Two:    Trial counsel failed to investigate potential defenses, interview relevant witnesses, and vigorously challenge the state's identification testimony, thereby denying [Petitioner] his Sixth Amendment right to effective assistance of counsel.

Claim Three:          [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel when trial counsel did not seek to withdraw [Petitioner's] plea after [Petitioner] told the court it was not knowing or voluntary.

Claim Four:           Trial counsel provided constitutionally ineffective assistance of counsel when he failed to correct the court's erroneous statement that consecutive sentences were required, failed to object to discussion of the sentence after the hearing had been adjourned, and failed to ensure that the consecutive sentences imposed by the court were not the result of a misunderstanding of the law.

Claim Five:           The trial court's erroneous belief that it was required "by law" to impose consecutive sentences deprived [Petitioner] of his constitutionally-protected liberty interest in a sentence in accordance with state law and thereby violated [Petitioner's] right to due process under the Fourteenth Amendment.

Claim Six:            [Petitioner] was denied his Fourteenth Amendment right to due process when the district court accepted [Petitioner's] involuntary no contest plea.

Claim Seven:          [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel on direct appeal when his appellate counsel failed to argue that [Petitioner's] plea was involuntary.

Claim Eight:          [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel on direct appeal when appellate counsel failed to appeal the denial of the motion to suppress Betts' and Biggs' identification testimony.

Filing No. 43 at 5–18.

In the Motion, Petitioner moved for an evidentiary hearing on his ineffective assistance of trial counsel claims set forth in Claims Two, Three, and Four, and two stand-alone ineffective assistance of direct appellate counsel in Claims Seven and Eight of the Amended Petition.  Filing No. 44 at 1.  Respondent filed a response in opposition to the

Motion, arguing the Motion was premature as briefing on the Amended Petition was not yet complete.  Filing No. 45.  This Court agreed and the Motion was stayed until after briefing on the Amended Petition was complete.  *See* Filing Nos. 46 and 55.

In lifting the briefing stay on the Motion, the Court acknowledged that the parties had addressed the issues raised in the Motion in their briefing addressing the Amended Petition.  Filing No. 55 (citing Filing Nos. 51 and 52).  However, the Court ordered supplemental briefing on the Motion, *id.* at 5, to which the parties complied, *see* Filing Nos. 60 and 64.  The Motion is now ripe for review.

## II.  GENERAL EVIDENTIARY HEARING LEGAL STANDARDS

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley* 520 U.S. 899, 904 (1997). Therefore, while Rule 6 of the Rules Governing § 2254 Cases allows petitioners to conduct discovery if they show good cause,  *Holt v. Howard*, 806 F.3d 1129, 1133 (8th Cir. 2015), before analyzing whether good cause has been shown to facilitate the development of new evidence, a district court must first consider the requirements set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *Shoop v. Twyford*, 596 U.S. 811, 821 (2022); *see also Marcyniuk v. Payne*, 39 F.4th 988, 999-1000 (8th Cir. 2022) (affirming district court's denial of request for discovery and evidentiary hearing where the petitioner could not demonstrate either that § 2254(e)(2) did not apply to him or that he could satisfy § 2254(e)(2)'s requirements).

Importantly, AEDPA directs how federal courts must consider petitions for habeas relief under § 2254, and generally limits a federal habeas court's review of the evidence and corresponding record to that which was developed in the state court.  *Twyford*, 596

U.S. at 819.  Development in the federal courts of claims not factually developed in the state courts generally cannot occur unless the prisoner can satisfy certain stringent requirements delineated at § 2254(e)(2) of ADEPA as follows:

> (A)    the claim relies on - -
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2); *see also* *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005).

## III.  DISCUSSION

Petitioner seeks to expand the record via an evidentiary hearing to factually develop Claims Two, Three, Four, Seven, and Eight.  Filing No. 44.  And, alternatively, to the extent this Court finds any of those same claims to be procedurally defaulted, Petitioner seeks an evidentiary hearing to excuse any procedural default(s) and to then factually develop the excused claims.  Filing No. 60 at 14–18.

The parties agree that only a portion of Claim Two was adjudicated by the state courts on its merits and is therefore exhausted.  *See* Filing No. 48 at 17–18; Filing No. 51 at 31–34; Filing No. 52 at 2–3.  The parties also appear to agree that the remainder of Petitioner's allegations in Claim Two, as well as Claims Three, Four, Seven, and Eight (the "Remaining Claims") were not addressed by the state courts on their merits. However, they disagree as to whether the Remaining Claims are procedurally defaulted or if they were fairly presented to, but ignored by, the state courts.  Filing No. 48 at 17–

18; Filing No. 51 at 31–34.  And ultimately, the parties espouse opposing positions regarding whether an evidentiary hearing is appropriate to excuse and/or develop any claims at issue in the Motion.[6]

Generally, to address such claims, this Court would determine the status of each claim as procedurally defaulted or exhausted before applying the relevant law regarding evidentiary hearings.  However, when considering the totality of the arguments presented by Petitioner, he submits he is entitled to expand the record on all claims regardless of whether the claims were: (1) exhausted and denied on their merits by the state courts, (2) exhausted but ignored by the state courts, or (3) procedurally defaulted.  *See* Filing No. 60 at 8 (arguing the claims at issue in the motion are not procedurally defaulted); *but see* Filing No. 51 at 4 (admitting Claim Four was not filed in the Direct Appeal as required but that ineffective assistance of appellate counsel claims raised in the PCM can *excuse* the procedural default of Claim Four) and at 31–34 (arguing all of the claims at issue in this Motion were presented to the state courts but the state courts failed to address their merits).

A review of the claims as separated into these three categories is useful as the ability to expand the record directly relates to exhaustion, merits review, and procedural default.  Therefore, this Court includes a brief discussion of exhaustion and procedural default before determining the legal standards applicable to each category and ultimately

---

[6] For his part, Respondent argues that all the claims at issue in the Motion, aside from a portion of Claim Two, are procedurally defaulted, and that this Court should decline to hold an evidentiary hearing both to excuse any procedural default or to further develop any claims.  Filing Nos. 52 and 64.

determining Petitioner does not meet the standards which would entitle him to an evidentiary hearing on any of his claims.[7]

## A.  Exhaustion and Procedural Default

The exhaustion requirement is satisfied when the facts and substance of a federal habeas claim have been *fairly presented* to the state courts.  Picard v. Connor, 404 U.S. 270, 275 (1971) (emphasis added).  The United States Supreme Court described the connection between fair presentment and exhaustion as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief.  In Nebraska, exhaustion ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska Supreme Court directly[8] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

---

[7] The Court notes that in considering the categories of claims, a determination as to whether any claim is procedurally defaulted, exhausted, or exhausted but not reviewed on its merits by the state courts has not been necessary.  As such, this Memorandum and Order does not contain such findings.

[8] Where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

A claim can become procedurally defaulted for the purposes of federal habeas review either: (1) due to the petitioner's failure to "fairly present" the claim all the way to the highest court of the state eligible to hear such a claim (and by the time the federal petition is filed, the state courts would decline to consider the claim on the merits because of a procedural bar if presented with them), or (2) the application of a procedural bar by state courts upon review of a claim, *see e.g. Coleman*, 501 U.S. at 750. And, to excuse a procedurally defaulted claim, the process is the same regardless of whether the state courts formally declined to consider the claim or not, with the only difference being that where a claim has not been addressed by the state courts the federal court must first predict that a state procedural bar would apply. *See Davila v. Davis*, 582 U.S. 521, 527 n. 1 (2017).

## B. Analysis

### 1. Exhausted claims addressed on their merits

When a claim has been fully adjudicated *on the merits* at the state court level, Section 2254(d) requires a successful habeas corpus petitioner in custody pursuant to the judgment of a State court to establish that the state's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). As federal habeas review of a merits decision under § 2254(d)(1) requires an examination of the state-court decision at the time it was made, and the record a federal court reviews when determining if the state court judgment violated Section 2254(d)(1) must be the same record that was before the state courts.

This is so "because a state court cannot be deemed to have unreasonably applied federal law to evidence it did not even know existed." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011).

While the Eighth Circuit has not ruled expressly that *Pinholster* should be considered with respect to a motion to conduct an evidentiary hearing, the Eighth Circuit has found that *Pinholster* should be considered when determining if new evidence may be developed in federal habeas corpus proceedings where claims arguably have been considered on their merits by the state courts. See *Sasser v. Hobbs*, 745 F.3d 896, 899 (8th Cir. 2014) (citing 28 U.S.C. § 2254(d); *Pinholster*, 563 U.S. 170). And other courts in this circuit have expressly found that under *Pinholster*, federal courts are not permitted to develop facts regarding a claim decided on the merits in state court and reviewed under § 2254(d)(1). *See e.g. Shockley v. Crews*, 696 F. Supp. 3d 589, 624 (E.D. Mo. 2023) (declining to allow an evidentiary hearing to proceed on claims which have been considered by the state courts on their merits under the holdings of *Pinholster* and *Twyford*); *Rhines v. Young*, No. 5:00-CV-05020-KES, 2016 WL 1453516, at *4 (D.S.D. Apr. 12, 2016) (same).

Here, the parties agree that a portion of Claim Two is both exhausted and was reviewed on the merits by the state courts and is therefore appropriately before this Court for consideration of its merits. *See* Filing No. 48 at 17–18v; Filing No. 51 at 31–34; Filing No. 52 at 2–3. However, Petitioner does not address why development of the record may occur when a claim has been exhausted and addressed on its merits in light of *Pinholster*, and this Court has found no compelling argument in which to allow such claim development. As such, no further expansion of the record may take place at this time

28

and the Motion must be denied as to the exhausted portion of Claim Two which the parties agree was reviewed on its merits in the state courts.[9]

### 2. Exhausted claims not addressed by the state courts

Petitioner argues that the Remaining Claims were presented to the state courts, but they were overlooked, and their merits were never addressed. *See, e.g.*, Filing No. 51 at 34. Petitioner does not address why a failure to consider fairly presented claims on their merits by the state courts allows for expansion of the record in light of *Pinholster/Twyford* and Section 2254(d), instead arguing he is entitled to expand the record on these claims because: (1) he was diligent in attempting to have them reviewed

---

[9] Further factual development may not be wholly precluded on this portion of Claim Two (or any other claim exhausted and reviewed on its merits by the state courts). If, after review solely on the state-court evidence, it appears the state court contravened or unreasonably applied clearly established federal law, the following language from *Pinholster* appears to establish that new evidence may be considered in such a situation:

> An offender who believes he is entitled to habeas relief must first present a claim (including his evidence) to the state courts. If the state courts reject the claim, then a federal habeas court may review that rejection on the basis of the materials considered by the state court. If the federal habeas court finds that the state-court decision fails (d)'s test (or if (d) does not apply), then an (e) hearing may be needed.

*Pinholster*, 563 U.S. at 205 (Breyer, J., concurring); *see e.g.* *Caudill v. Conover*, 871 F. Supp. 2d 639, 649 (E.D. Ky. 2012) (citing Ballinger v. Prelesnik, 844 F.Supp.2d 857, 867–69 (E.D. Mich. 2012); *Lynch v. Hudson*, No. 2:07–cv–948, 2011 WL 4537890, *5 (S.D. Ohio Sept. 28, 2011); *Williams v. Mitchell*, No. 1:09–cv–2246, 2011 WL 5118469, *2 (N.D. Ohio Oct. 27, 2011) (collecting cases); *Hearn v. Ryan*, No. CV 08–448–PHX–MHM, 2011 WL 1526912, *2 (D.Ariz. Apr.21, 2011) ("What is dependent on the evidentiary hearing, therefore, is whether relief will ultimately be granted, not whether the state court acted unreasonably. Accordingly, *Pinholster* does not prevent this Court from considering evidence ... at the evidentiary hearing."); *Skipwith v. McNeil*, No 09–60361–CIV, 2011 WL 1598829, *5 (S.D.Fla. Apr.28, 2011) (holding that because Section 2254(d)(2) was satisfied it could consider new evidence adduced at evidentiary hearing and concluding petitioner was entitled to relief); *Fitzgerald v. Workman*, No. 01–CV–531–GKF–TLW, 2011 WL 3793644, *3 (N.D.Okla. Aug.25, 2011) (where state court unreasonably applied federal law under Section 2254(d)(2), "the Court reviews these claims de novo, [and] the AEDPA and the *Pinholster* and *Richter* cases do not apply...."); *see also* Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (noting that when a habeas court finds an unreasonable application of controlling federal law, the court must then "resolve the claim without the deference AEDPA otherwise requires."); *Rice v. White*, No. 10–1583, slip op. at 14–15 (6th Cir. Oct. 26, 2011) (conducting plenary review of petitioner's claim once it found Section 2254(d)(2) satisfied).

Accordingly, this Court may consider a later motion for evidentiary hearing on exhausted claims if Petitioner first overcomes 28 U.S.C. § 2254(d) based solely on the evidence that was actually before the state court. As the Court makes no such findings regarding exhaustion or whether any of Petitioner's claims overcome Section 2254(d) at this time, any motion would be premature until after such findings are made.

on their merits in the state courts, and (2) he meets the criteria for obtaining an evidentiary hearing by alleging disputed facts which, if proven, would entitle him to habeas relief. Filing No. 44 at 4; Filing No. 60 at 2, 4.

When a claim has been presented to the state courts at every round, but those same courts fail to adjudicate the claim on the merits, federal habeas review is not subject to the deferential standard contained in AEDPA, and instead those claims are reviewed de novo. *See Cone v. Bell*, 556 U.S. 449, 472 (2009); *see also Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001) (explaining that a federal court "can hardly defer to the state court on an issue that the state court did not address."). And, some Courts have theorized that in instances where a federal court may perform a review de novo because a claim was presented to, but not reviewed by the state courts "on the merits," the "on the merits" language of § 2254(d) also does not apply, allowing a federal court to consider new evidence in addressing the claim. *See Caudill v. Conover*, 871 F. Supp. 2d 639, 649 (E.D. Ky. 2012) (collecting cases).

However, the United States Supreme Court has held that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Therefore, any failure to discuss the reason for an otherwise fairly presented claim's denial by the state courts does not necessarily exclude the claim having been adjudicated on its merits under *Harrington*. However, it is unclear if *Harrington* applies to claims never mentioned by any state court throughout the proceedings.[10]

---

[10] *See e.g. Gordon v. Braxton*, 780 F.3d 196 (4th Cir. 2015) (declining to apply *Pinholster*'s bar on evidence development, holding that the state court did not adjudicate a federal habeas petitioner's claim on the merits because it: (1) "unreasonably truncated further factual development" on a claim and (2) was silent regarding the petitioner's assertion regarding that claim) (citing *Winston v. Kelly*, 592 F.3d 535 (4th Cir. 2010), and

More importantly, for purposes of addressing the Motion currently before this Court, if Petitioner intended to raise such a potential path to record expansion, Petitioner does not address this issue at any point in his briefing. Instead, he simply concludes that record expansion is available where claims have been exhausted but not addressed on their merits in cases where a federal habeas petitioner made diligent but ultimately unsuccessful attempts to develop the record in the state courts. *See* Filing No. 43 at 4–5.

This Court is not inclined to accept Petitioner's invitation to allow record expansion based on such a conclusory statement. Nor shall this Court further address the issue of whether the record may be expanded in federal courts on a claim that has been fairly presented to the state courts but wholly ignored by them, when no substantive argument has been made by Petitioner to which Respondent would be entitled to address. To the extent Petitioner intends to take such a position, he may file a new motion for evidentiary hearing in accordance with this Memorandum and Order addressing the issue of record expansion for claims wholly ignored by the state courts considering *Harrington*. For the purposes of addressing the Motion currently before the Court, the Motion shall be denied without prejudice as to any claims which allegedly were exhausted but were not addressed on the merits by the state courts.

---

*Winston v. Pearson*, 683 F.3d 489 (4th Cir. 2012) for the proposition that a claim is not adjudicated on the merits for purposes of AEDPA deference when the state court makes its decision on a materially incomplete record, which may occur when a state court unreasonably refuses to permit further development of the facts of a claim).

### 3. Procedurally defaulted claims[11]

Counterintuitively, although still extremely difficult to obtain, it is more *likely* for claim development to proceed in federal court where a habeas claim is procedurally defaulted. However, for claim development to occur on a procedurally defaulted claim, the default must be excused, which generally occurs "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."[12] *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 749 (1991).

To establish cause, Petitioner must show something beyond his or his counsel's control, such as state interference, which actually prevented a claim from being raised in state court. *Zeitvogel v. Delo*, 84 F.3d 276, 279 (8th Cir.1996). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. As further explained by the Supreme Court,

> the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable, would constitute cause under this standard.

*Id.* (cleaned up).

---

[11] This Court shall, for the purposes of addressing the Motion only, assume without deciding that the Remaining Claims are procedurally defaulted to address whether holding an evidentiary hearing is appropriate to excuse their procedural default and/or to expand the record.

[12] As Petitioner does not raise actual innocence as a basis for excusing any procedural default in his Motion, this Court shall only focus on cause and prejudice as a basis to excuse any potential procedural defaults.

In *Martinez v. Ryan*, the Supreme Court created a narrow exception to the cause and prejudice rule discussed in *Coleman*, providing that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance *at trial* if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 17 (2012) (emphasis added). The holding was further expanded by the Court, finding that *Martinez* applies "where . . . state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413, 429, (2013).

Petitioner offers two broad arguments to excuse the procedural default of any of his claims: (1) that he is entitled to use the United States Supreme Court's holding in *Martinez v. Ryan*, and (2) that he can establish cause and prejudice.[13] Filing No. 51 at 39, 41, 45, 60, 63; Filing No. 60 at 14–18. And he argues that to the extent any claim is found to be procedurally defaulted by this Court, that an evidentiary hearing should be held to both excuse the procedural default of each claim and factually develop them. Filing No. 60 at 14–18.

### a. *Martinez* does not apply

Petitioner's argument addressing *Martinez* is easily disposed of.

---

[13] Petitioner also appears to argue that because "[n]either the Supreme Court nor the Eighth Circuit have addressed the extent to which *Shinn v. Ramirez*, 596 U.S. 366, 386 (2022), reaches requests for evidentiary hearings on cause and prejudice where the basis of the petitioner's cause argument is not ineffective assistance of post-conviction counsel," such a standard may not apply to Petitioner because he was proceeding pro se. Filing No. 60 at 17 (citing *Marcyniuk v. Payne*, 39 F.4th 988, 1002 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 2617 (2023); *Black v. Falkenrath*, 93 F.4th 1107, 1109 (8th Cir. 2024)). As it is clear that a failure to develop the record may be attributable to a prisoner or his counsel, *see Williams*, 529 U.S. at 432 (holding that a prisoner fails to develop a claim for purposes of § 2254(e)(2) when "there is lack of diligence, or some greater fault, *attributable to the prisoner* or the prisoner's counsel.") (emphasis added), there is no reason for this Court to consider whether these principles would apply to petitioner or his postconviction counsel alike.

33

In relation to Claims Seven and Eight, which are freestanding claims of ineffective assistance of counsel on direct appeal, the Supreme Court has declined to extend *Martinez* to claims relating to ineffective assistance of direct appellate counsel. *See Davila*, 582 U.S. at 530. As such, *Martinez* cannot be utilized to excuse any procedural default of Claims Seven and Eight.[14] *See* Filing No. 43 at 17–18.

Petitioner recognizes the inapplicability of *Martinez* to his ineffective assistance of direct appellate counsel claims but urges this Court to extend *Martinez*'s holding to encompass them, arguing that there would not be any "substantial cost" to the courts in doing so. Filing No. 60 at 63–64. Specifically, Petitioner appears to recognize that he failed to file a petition for further review after these claims were arguably denied in the Partial Remand Order, but he submits that the Supreme Court's holding in *Davila* limiting *Martinez* to ineffective assistance of trial counsel claims may be overlooked by this Court because "excusing the procedural default in this situation would not open the floodgates to claims that have never been reviewed by a state court." Filing No. 51 at 64 (citing *Davila*, 582 U.S. at 525).

While this Court disagrees that such a ruling would not open the floodgates to similar claims as the procedural posture of Petitioner's case is not dissimilar to many others, this argument ignores the fact that this Court is bound to apply the holding in *Davila* in this case. "'Precedents do not cease to be authoritative merely because counsel in a later case advance a new argument.'" *Harris v. The Epoch Group, L. C.*, 357 F.3d 822, 826 (8th Cir. 2004) (quoting *United States v. Hill*, 48 F.3d 228, 232 (7th Cir. 1995)).

---

[14] Similarly, Petitioner also urges this Court to extend an equitable exception as the Court did in *Martinez* as neither *Martinez* nor *Coleman* addressed a procedural default where the petitioner had no counsel at all. Filing No. 51 at 60–62. This Court finds this argument unpersuasive without further authority, which Petitioner fails to provide.

Moreover, as pointed out by Respondent, the United States Supreme Court in *Shinn v. Ramirez* foreclosed any extension of *Martinez* beyond the narrow exception to procedural default at issue in that case. Filing No. 52 at 11 (citing *Shinn*, 596 U.S. at 386). For these reasons, the exception in *Martinez* cannot be used to excuse any procedural default of Claims Seven or Eight.

In relation to Claims Two, Three, and Four, which are claims of ineffective assistance of trial counsel, the rule announced in *Martinez/Trevino* applies only to matters where the first opportunity to raise an ineffective assistance of *trial* counsel claim was postconviction. *Martinez*, 566 U.S. at 9, 17 (emphasis added). Such is not the case here.

In Nebraska, where a criminal defendant has different counsel on direct appeal, all known claims of ineffective assistance of trial counsel must be raised at their first opportunity, which is on direct appeal. *State v. Marshall*, 725 N.W.2d 834, 838 (Neb. 2007) ("the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity.") (citing *State v. Dandridge*, 651 N.W.2d 567 (Neb. 2002)). As Petitioner's counsel was Kahler at trial and Troia on direct appeal, not only was postconviction not his first opportunity to raise any known ineffective assistance of trial counsel claims, but he was required to raise those claims in his direct appeal. Therefore, in Claims Two, Three, and Four, to the extent Petitioner sought to excuse his failure to raise any ineffective assistance of trial counsel claims on direct appeal via *Martinez*, his argument is without merit.

**b.  Cause and prejudice**

Petitioner argues that to the extent any of the Remaining Claims are procedurally defaulted he is able to establish cause for their procedural default in the following ways:

(1) his lack of legal knowledge when proceeding pro se postconviction, (2) via an imbedded claim of ineffective assistance of direct appellate counsel for failure to raise ineffective assistance of trial counsel claims on direct appeal, and (3) his lack of fault for failing to raise any of these claims as he exercised due diligence in attempting to raise them throughout the postconviction process.  Petitioner contends that at a bare minimum this Court should hold an evidentiary hearing to address the excuse of any procedural default this Court finds.  Filing No. 60 at 15.

As an initial matter, determining whether an excuse to procedural default exists does not automatically require an evidentiary hearing.   Where the issue can be resolved on the record alone, no hearing is required.  *Noel v. Norris*, 194 F. Supp. 2d 893, 914 (E.D. Ark. 2002), supplemented (Apr. 16, 2002), *aff'd*, 322 F.3d 500 (8th Cir. 2003).  However, for the reasons that follow, the Court is unpersuaded by any of Petitioner's arguments that cause exists to excuse any potential procedural defaults of the Remaining Claims.  Therefore, as Petitioner does not allege that any other path to obtaining an evidentiary hearing exists, the Motion shall be denied and no evidentiary hearing shall be held.

### i.  Lack of legal knowledge and/or pro se status

Petitioner alleges Claims Seven and Eight are freestanding ineffective assistance of appellate counsel claims that were raised in his PCM, and were again raised in his PCM Appeal.  Filing No. 51 at 67.  However, he admits that, to the extent those claims were dismissed by the state appellate court in the Partial Remand Order, he did not file a petition for further review.  *Id.*  Petitioner argues that he was proceeding pro se when he filed his PCM and the PCM Appeal and he failed to file a petition for further review after

some of his claims were denied in the Partial Remand Order because he did not understand the effect of the Partial Remand Order or Nebraska appellate procedure. Filing No. 60 at 12.  He appears to submit that any procedural default attributable to his lack of understanding of the effect of the Partial Remand Order and his lack of knowledge of the law constitutes cause for excusing any procedural default which may result from his failure to file a petition for further review.[15]  *Id.*

In Nebraska, within postconviction proceedings, an order granting an evidentiary hearing on some issues and denying a hearing on others is a final, appealable order as to the claims denied without hearing.  *State v. Koch*, 304 Neb. 133, 933 N.W.2d 585 (2019).  And Neb. Ct. R. App. P. § 2-102(F)(1) requires a petition for further review and memorandum brief in support be filed within 30 days after release of the Court of Appeals' opinion or entry of an order finally disposing of the appeal, whichever occurs later.

To the extent the Partial Remand Order finally disposed of all of Petitioner's un-remanded claims in the PCM Appeal, including Petitioner's ineffective assistance of appellate counsel claims, Nebraska law required Petitioner to file a petition for further review addressing those claims within thirty days of the release of the Partial Remand Order, which he did not file.   Moreover, the law is clear that a petitioner's pro se status, limited education, below-average intelligence, or any unfamiliarity with the intricacies of the law or legal procedure are not sufficiently external to constitute cause overcoming a

---

[15] Petitioner also argues that, in his circumstances, the failure to file the petition for further review may not constitute procedural default at all because Petitioner was without counsel when filing the PCM and PCM Appeal.  *See* Filing No. 51 at 59–61 (urging this Court to extend *Martinez* to include situations where a Petitioner was not represented by counsel at all postconviction).  However, the United States Supreme Court has otherwise indicated that *Martinez* should not be extended beyond the scenario presented there. *See Shinn*, 596 U.S. 366 ("In short, *Martinez* foreclosed any extension of its holding beyond the 'narrow exception' to procedural default at issue in that case.").

procedural default.  *See Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992); *Stanley v. Lockhart*, 941 F.2d 707, 710 (8th Cir. 1991); *McKinnon v. Lockhart*, 921 F.2d 830, 832 n. 5 (8th Cir. 1990); *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir. 1988); *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988).

As such, Petitioner's pro se status and lack of knowledge does not provide an excuse to the apparent procedural default of those claims via their failure to receive a full round of review by Nebraska courts.[16]

### ii.  Ineffective assistance of direct appellate counsel

Petitioner argues that his direct appeal attorney Troia's failure to raise claims of ineffective assistance of trial counsel Kahler, which he now raises in the remainder of Claim Two as well as Claims Three and Four, can serve as cause to excuse any procedurally defaulted ineffective assistance of trial counsel claim because Petitioner raised Troia's ineffectiveness as an independent claim to the state courts, Filing No. 51 at 39 (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000)), 43–47, and because

---

[16] The Court notes that Petitioner also raises an argument that he tried to revive some of the ineffective assistance of trial counsel claims imbedded in his ineffective assistance of appellate counsel claims in the PCM which were not (or appeared not to be) remanded in the Partial Remand Order via the filing of several motions to the state district court on remand, including motions to amend the PCM (which included and/or clarified some of the claims Petitioner now raises in his Petition), but those motions were denied as being outside the mandate of the Partial Remand Order.  Filing No. 51 at 35; Filing No. 60 at 11.  He also argues that, despite his failed attempts to present these claims to the state district court on remand, the state district court addressed some of the claims he attempted to raise anyway in its order addressing the Remanded PCM Denial.  Filing No. 40-22 at 349).  He further contends that he raised those claims again in the Remanded PCM Appeal, Filing No. 60 at 13 (citing Filing No. 40-13 at 7), and after their denial he filed a petition for further review again addressing those claims, *see* Filing No. 40-16 at 9.  Petitioner argues that these claims were never denied due to a state procedural rule, rendering them exhausted.  Filing No. 60 at 14.  However, to the extent Petitioner contends these claims are not procedurally defaulted, but instead were exhausted but not reviewed on their merits, this Court has already addressed the shortfalls in Petitioner's argument supporting expanding the record on such claims in the subsection titled "[e]xhausted claims not addressed by the state courts" earlier in this Memorandum and Order.

Troia's failure to raise the ineffective assistance of trial counsel claims itself was so ineffective as to also violate the Federal Constitution. *Id.* at 43.

While Respondent agrees that the raising of an ineffective assistance of direct appeal counsel claim may serve as cause to excuse the procedural default of an ineffective assistance of trial counsel claim, Respondent argues that Petitioner cannot do so here because Petitioner's claim of ineffective assistance of appellate counsel was itself not properly exhausted. Filing No. 52 at 6. Specifically, Respondent submits that Petitioner never invoked "one complete round" of Nebraska's established appellate process as Petitioner failed to file a petition for further review following the denial of his ineffective assistance of appellate counsel claims in the Partial Remand Order, effectively omitting their review by the Nebraska Supreme Court. Filing No. 52 at 6 (citing Filing No. 40-2; Filing No. 40-5).  Respondent is correct.

While an ineffective assistance of appellate counsel claim can provide cause to excuse the procedural default of claim which should have been raised on direct appeal, excuse is only possible if the ineffective assistance of appellate-counsel claim itself has been properly exhausted.  *See Murray v. Carrier*, 477 U.S. 478 (1986) (observing that the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); *Beaulieu v. Minnesota*, 583 F.3d 570 (8th Cir. 2009).  However, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted. . . ." nullifying its use as cause to excuse the procedural default of an underlying ineffective assistance of counsel claim. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

Here, Petitioner's path to excusing any procedural default of Claims Three and Four suffers from the same error previously discussed in relation to Claims Seven and Eight—Petitioner's failure to file a petition for further review to the extent the Partial Remand Order became a final appealable order as to all of his ineffective assistance of direct appellate counsel claims. As Petitioner did not file a petition for further review within thirty days after the Partial Remand Order was filed, he failed to submit any claim which was denied in the Partial Remand Order to the final round of review. Therefore, any excuse of the procedural default of Claims Three and Four (or the remaining portion of Claim Two) via the raising of an ineffective assistance of direct appeal counsel must fail as Petitioner's ineffective assistance of direct appellate counsel claims were not properly exhausted postconviction.

### iii.  Cause and prejudice under *Coleman*

Finally, Petitioner appears to argue that he is able to excuse any procedural default of the Remaining Claims because he is not at fault for their failure to be exhausted as he diligently attempted to raise them at all stages of the postconviction proceedings. Filing No. 60 at 4. And he argues that he is entitled to factual development of all of the Remaining Claims because he exercised diligence in trying to present them postconviction including seeking an evidentiary hearing to address them at each possible avenue. *Id.* at 16–17 (citing *Shinn*, 596 U.S. at 385).

In support of his diligence argument, Petitioner argues that his "diligent efforts to develop the record began when he raised claims [Two] through [Four] and [Seven] and [Eight] in his pro se [PCM] on August 29, 2013." Filing No. 60 at 4 (citing Filing No. 16-5). While Petitioner admits that "the claims did not always match their argument

headings," he argues "they were raised nonetheless and signified the types of issues [Petitioner] hoped to explore at an evidentiary hearing." *Id.*  He further contends that those same claims were raised in his PCM Appeal, where he again requested an evidentiary hearing to develop them. *Id.* at 7.  And, he argues that on remand that he attempted to clarify the ineffective assistance of counsel claims that the Court of Appeals had deemed "inartful" in both a motion to amend the PCM and motion to expand the record, but both were denied by the district court. *Id.*  Ultimately, Petitioner submits that despite his best efforts to raise these claims, he was "substantially prevented from exploring any of his other claims of ineffective assistance of counsel," presumably due to the state district and appellate courts' failure to discern them from his "inartful" PCM and PCM Appeal. *Id.*

Petitioner is correct that in limited circumstances, where the failure to develop a claim at the state court level was not his "fault," the United States Supreme Court has found that § 2254(e)(2) does not apply, allowing factual development in federal court. *Id.* at 4, 15–18 (citing *Shinn*, 596 U.S. 366; *Williams v. Taylor*, 529 U.S. 362 (2000)). However, to establish cause to excuse the procedural default of a claim in such circumstances, a petitioner must show something beyond his control postconviction, such as state interference, actually prevented him "from raising the claims and presenting the evidence in state court." *Delo*, 84 F.3d at 279 (citing *Coleman*, 501 U.S. at 753).

Here, any reading of Petitioner's arguments relating to his attempts to raise various ineffective assistance of counsel claims to the state courts following the denial of those same claims in the Partial Remand Order leads back to the reason why those claims were apparently not properly exhausted to begin with—Petitioner's failure to file a petition for

further review following issuance of the Partial Remand Order.  It does not matter whether Petitioner, realizing his error after the time had passed to file a petition for further review or thinking that he was supposed to address those claims in the remanded proceedings due to his lack of understanding of Nebraska's appellate procedural rules, ultimately attempted to address them in the remand proceedings.  Petitioner's decision to address these claims in the remand proceedings, or his error in not filing a petition for further review, was not due to outside interference of any kind.  Petitioner was able, but simply failed to, raise any of the Remaining Claims in a petition for further review.

As this "fault" can only be attributable to Petitioner, especially as he was without postconviction counsel, any diligent efforts to obtain later review only needed to occur *because* Petitioner failed to bring the Remaining Claims to the Nebraska Supreme Court at the appropriate time.  In other words, Petitioner's diligent efforts to revive any of the Remaining Claims were due to his own fault initially.  Therefore, Petitioner cannot avoid being at fault for failure to exhaust the Remaining Claims.  And finally, because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice.  *Abdullah v. Groose*, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

## IV.  CONCLUSION

In summary, Petitioner's Motion must be denied without prejudice.  To the extent Petitioner seeks further development of any exhausted claims, this Court must first determine whether a claim overcomes 28 U.S.C. § 2254(d) based solely on the evidence that was actually before the state court, arguably, before it may consider expanding the record on such claims.  To the extent any claims were presented to the state courts, but

42

instead of being considered on their merits they were wholly overlooked, and their merits were never addressed, the Motion must be denied as Petitioner failed to advance any substantive argument supporting record expansion in such circumstances. And finally, the Motion must be denied as to any claims which were procedurally defaulted as the United States Supreme Court's holding in *Martinez v. Ryan* cannot supply a basis to excuse their procedural default and as Petitioner failed to establish cause and prejudice which could be used to excuse any procedurally defaulted claims.

IS THEREFORE ORDERED:

1.      Petitioner's Motion, Filing No. 44, is denied.

2.      To the extent Petitioner seeks to file a new motion for evidentiary hearing on the grounds that Petitioner is entitled to an evidentiary hearing to further develop any claims which Petitioner contends were properly presented to the state courts but were never considered on their merits, Petitioner may file such a motion no later than **July 25, 2025.**

      a.      Petitioner must keep in mind that, if he elects to file a new motion, the motion must state to which claim the motion applies and address the legal arguments for why claim development may be allowed in such circumstances, considering the holdings in *Pinholster* and *Harrington*. Petitioner is warned that any additional discussion of the merits of any claims or further elaboration on why Petitioner contends they were fairly presented to the state courts in the new motion outside the scope of the argument presented in the motion shall not be considered by this Court.

     b.     If Petitioner elects to file a new motion, Respondent shall also limit his response to addressing the arguments presented in the any new motion.

3.     To the extent Petitioner files a motion for evidentiary hearing in accordance with this Memorandum and Order, Respondent shall have 14 days from the date in which any new motion for evidentiary hearing is filed to file a response, and Petitioner shall have 7 days following Respondent's filing of a response to file a reply (to the extent a response is filed).  The parties are reminded that any deadline extensions must be made by written motion before expiration of the applicable deadline.

4.     If Petitioner elects not to file a motion for evidentiary hearing in accordance with this Memorandum and Order in the time allotted, this matter shall be ripe for disposition and no further filings addressing the merits of the Petition shall be accepted by this Court without leave.

5.     The Clerk's Office is directed to set a pro se case management deadline in this case using the following text: **July 25, 2025:** Check for motion for evidentiary hearing.

Dated this 25th day of June, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court