IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THOMAS R. JONES,<br><br>Petitioner,<br><br>vs.<br><br>ROB JEFFREYS,<br><br>Respondent. | **8:21CV249**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Petitioner Thomas R. Jones' ("Petitioner") Amended Petition for Writ of Habeas Corpus (the "Petition"), Filing No. 43, and motion for evidentiary hearing (the "Second Motion for Evidentiary Hearing"), Filing No. 68.

For the reasons that follow, Petitioner's Second Motion for Evidentiary Hearing shall be denied and his Petition shall be denied and dismissed with prejudice.

## I. CLAIMS

Petitioner raised the following claims in his Amended Petition:[1]

Claim One: Petitioner was denied his Sixth Amendment right to effective assistance of counsel at trial when, in order to induce a plea agreement, trial counsel Matthew Kahler provided inaccurate information regarding: (1) the strength of the evidence against Petitioner; (2) the statutory penalties for the charges; (3) the applicability of the habitual offender enhancement; and (4) the sentence Petitioner would receive if he accepted a plea offer.

Claim Two: Trial counsel failed to: (1) investigate potential defenses; (2) interview relevant witnesses; and (3)

[1] While the Court previously summarized the claims raised in the Amended Petition, *see* Filing No. 65 at 21-22 (citing Filing No. 43 at 5-18), because Respondent splits several of the claims into numbered subparts in his briefing and Petitioner also utilizes the same numbering in response, *see* Filing No. 48 at 13, 17, and 19, the Court has modified its prior summary here and utilized Respondent's subpart numbering in this Memorandum and Order for ease of reference in addressing the parties' arguments.

| | |
|---|---|
| | vigorously challenge the State's identification testimony. |
| Claim Three: | Petitioner was denied his Sixth Amendment right to effective assistance of counsel when trial counsel did not seek to withdraw Petitioner's plea after Petitioner told the court it was not knowing or voluntary. |
| Claim Four: | Trial counsel provided constitutionally ineffective assistance of counsel when he failed to: (1) correct the court's erroneous statement that consecutive sentences were required; (2) object to discussion of the sentence after the hearing had been adjourned; and (3) ensure that the consecutive sentences imposed by the court were not the result of a misunderstanding of the law. |
| Claim Five: | The trial court's erroneous belief that it was required "by law" to impose consecutive sentences deprived Petitioner of his constitutionally-protected liberty interest in a sentence in accordance with state law and thereby violated Petitioner's right to due process under the Fourteenth Amendment. |
| Claim Six: | Petitioner was denied his Fourteenth Amendment right to due process when the district court accepted Petitioner's involuntary no contest plea. |
| Claim Seven: | Petitioner was denied his Sixth Amendment right to effective assistance of counsel on direct appeal when his appellate counsel failed to argue that [Petitioner's] plea was involuntary. |
| Claim Eight: | Petitioner was denied his Sixth Amendment right to effective assistance of counsel on direct appeal when appellate counsel failed to appeal the denial of the motion to suppress Betts' and Biggs' identification testimony. |

## II. BACKGROUND

### A. Factual Background, Conviction, and Sentence[2]

The events giving rise to this case occurred during the morning hours of April 3, 2010. According to the factual basis presented by the State and agreed to by [Petitioner], on that date, two men were walking near 40th and Bedford Streets in Omaha, Nebraska, when a white sedan drove by with a black male driving. The two men did not recognize the driver and kept walking. A short while later, one of the two men looked back and observed that a black male had left the vehicle, was walking toward the two men, and had a gun raised and pointed at them. The two men started to run and heard shots being fired; both were struck by gunfire, one in the neck and one in the foot. A surveillance video in the area captured images of the vehicle and a partial license plate number, which led law enforcement to a vehicle registered to [Petitioner]. [Petitioner] was later located driving the vehicle and was apprehended after a pursuit that included a traffic accident. During the pursuit, [Petitioner] was observed throwing the gun out of the vehicle's window. The two victims also identified [Petitioner] from a photographic lineup.

On July 26, 2011, [Petitioner] was charged by a second amended information with three offenses: second degree assault, first degree assault, and use of a weapon in the commission of a felony.[3] [Petitioner] entered no contest pleas to all three charges. At the time of his pleas, the court advised [Petitioner] that the second degree assault charge carried a possible sentence of 1 to 20 years' imprisonment; that the first degree assault

[2] The Court restates the facts in the "Factual Background, Conviction, and Sentence" section as they were recited by the Nebraska Supreme Court on direct appeal in *State v. Jones*, Case No. A-11-852, Filing No. No. 40-4. *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition)

[3] At trial Petitioner was represented by attorney Matt Kahler. *See* Filing No. 40-24 at 1.

charge carried a possible sentence of 1 to 50 years' imprisonment; and that the use of a weapon charge carried a possible penalty of 5 to 50 years' imprisonment. The court also advised [Petitioner] that the sentence imposed for the use of a weapon charge was required to be imposed as a consecutive sentence to the sentence imposed for the underlying charge.

On September 23, 2011, [Petitioner] appeared for sentencing. At the sentencing hearing, [Petitioner] addressed the court and indicated that he felt the pleas he had entered had been "somewhat ill-advised," that he felt rushed to enter the pleas, and that he felt like he had been "somewhat ill-informed." He told the court that he was "not some menace to society" and requested the court consider "a suspended sentence" because he had a 10-month-old son whose life he had not yet been a part of and because he had an 11-year-old daughter whose mother was then incarcerated. [Petitioner] did not request to withdraw his plea.

The State argued for sentences of incarceration and noted that the only reason the injuries suffered by the victims were not more serious was because "it was a bad shot." The State noted that the shooting "was a brazen bold act on a Saturday morning in broad daylight, walking down the street, firing at people," and noted that [Petitioner] was at the time prohibited from owning or possessing a firearm.

The court orally imposed sentences on all three counts. On the second degree assault conviction, the court sentenced [Petitioner] to a term of 20 to 20 years' imprisonment and advised [Petitioner] that his "parole eligibility date . . . and [his] mandatory discharge date" would be "in 10 years." On the first degree assault conviction, the court sentenced [Petitioner] to a term of 20 to 20 years' imprisonment and advised

[Petitioner] that his 'parole eligibility date . . . and [his] mandatory discharge date" would be "in 10 years." On the use of a weapon conviction, the court sentenced [Petitioner] to a term of 10 to 10 years' imprisonment and advised [Petitioner] that the conviction carried a mandatory minimum sentence of 5 years and advised [Petitioner] that his "parole eligibility date . . .and [his] mandatory discharge date" would be "in 5 years."

After announcing the sentences imposed for each conviction, the court stated: "I'm going to run - I have to by law run those consecutive to one another." When the court asked if there was "[a]nything else," [Petitioner's] counsel indicated, "[n]o, Your Honor." The court indicated that the parties were excused, but counsel for the State asked: "Judge, are all three running consecutive, or just the first two?" The court replied: "All three are running consecutive." No objection or further inquiry was made by [Petitioner] or his counsel.

**B. Direct Appeal**

On December 28, 2011, and with the assistance of new counsel Jason E. Troia, Petitioner filed a direct appeal challenging his sentences and raising claims of ineffective assistance of trial counsel Kahler (the "Direct Appeal"). Filing No. 40-7. Specifically, Petitioner raised the following claims: (1) the district court's pronouncement of sentence prior to excusing the parties was different than the written sentence contained in the mittimus and sentencing order, (2) the trial court abused its discretion by ordering consecutive sentences for the two assault convictions, and (3) ineffective assistance of trial counsel alleging Kahler pressured him into entering into a plea agreement as opposed to going to trial. *Id.* at 11.

In support of his ineffective assistance of trial counsel claim, Petitioner alleged the following:

> [Petitioner] received ineffective assistance of counsel because his counsel pressured him to enter into a plea agreement as opposed to a trial. [Petitioner] was told to consider things, such as the District Court's personal plans that it would rather be tending to, in making the decision. The end result was that [Petitioner] entered a plea that was made involuntarily, unintelligently and without understanding.
>
> . . .
>
> In the present case, [Petitioner's] trial counsel pressured him to enter into the plea agreement that resulted in [Petitioner] entering his plea involuntarily, unintelligently, and without proper understanding. Part of the pressure was due to the last-minute urging by his counsel of [Petitioner] to enter into a plea on the eve of his trial. [Petitioner's] counsel indicated to him that his sentence would be impacted if [Petitioner] maintained a desire to go to trial due to the District Court'[s] personal plans that the District Court would rather be doing than presiding over his trial. [Petitioner's] trial counsel also indicated to him that he would receive a sentence as if he was a habitual criminal if he proceeded to trial and lost. [Petitioner] was not habitual eligible at the time. [Petitioner] indicated to the Court at the time of sentencing that he had reservations about his plea stating that his plea was "somewhat ill-advised. It was five minutes prior to another hearing that we were scheduled to have. I had, I'll say, five minutes to decide on this life-changing experience as well as to a degree I feel I was somewhat ill-informed." Had he not been pressured to enter into the plea agreement, he would not have done so.

*Id.* at 11, 16 (internal docket references omitted).

On June 12, 2012, the Nebraska Court of Appeals affirmed Petitioner's conviction and sentence, denying all claims challenging Petitioner's sentence and declining to address the ineffective assistance of counsel claim, finding the record was insufficient to perform a review. Filing No. 40-4 at 5–6.

On July 12, 2012, Petitioner filed a petition for further review of the Direct Appeal and brief in support (the "Direct Appeal PFR"), restating the claims relating to sentencing brought in his Direct Appeal but agreeing that the "record was insufficient for review" of

his ineffective assistance of counsel claims. Filing 40-9. The Direct Appeal PFR was summarily denied by the Nebraska Supreme Court. Filing No. 40-1 at 4.

**C. Postconviction**

**1. The postconviction motion**

Petitioner filed his postconviction motion (the "PCM") on August 29, 2013. Filing No. 40-19 at 4-32. In it, Petitioner raised the following two general assignments of error: (1) ineffective assistance of direct appeal counsel for failure to raise claims of ineffective assistance of trial counsel (the "Imbedded IAC Claims") and (2) trial court error for issuing what Petitioner argued was an unconstitutional determinate sentence on each of the three counts against him. *Id.* at 7, 18.

In his Imbedded IAC Claims, Petitioner raised the following ineffective assistance of trial counsel claims: failure to investigate and advise Petitioner of the consequences of entering a plea of nolo contendere and failure to properly advise Petitioner regarding potential sentencing outcomes. *Id.* at 7-8. In support, Petitioner argued that he would not have agreed to a plea but for trial counsel's erroneous and misleading advice, but he did so because: (1) trial counsel did not inform Petitioner of the actual sentencing risks inherent in a nolo contendere plea, (2) trial counsel erroneously informed Petitioner that if he did not accept the plea he would (or could) be charged and sentenced as a habitual offender, because the state court could use the first two felony convictions to enhance the third felony conviction, and that the court would be inclined to do so for wasting the court's time with a trial, and (3) trial counsel erroneously informed Petitioner that the law required

a concurrent sentence structure on the first two counts because they occurred at the same time.[4] *Id.*

Later in the PCM, Petitioner also alleged that trial counsel failed to negotiate a specific sentencing recommendation to the Court in conjunction with the plea and "failed to move to withdraw the plea" after learning that Petitioner "became aware of the misadvice." *Id.* at 12, 14. Petitioner further noted that he expressly informed the court prior to sentencing that he had been misadvised by trial counsel about the terms of the plea but neither the trial court nor his trial counsel took any action. *Id.* at 8, 12. Petitioner argued that, but for trial counsel's errors, it was "reasonably likely" he would have rejected the nolo contendere plea he accepted, and the outcome of the proceeding would have been more favorable to him. *Id.* at 12, 15.

Also under the Imbedded IAC Claim heading, Petitioner raised the following ineffective assistance of trial counsel claims relating to trial counsel's pre-trial actions: (1) withholding of exculpatory evidence that could have formed the basis of a viable defense, (2) refusal to investigate information surrounding the charged offenses, (3) refusal to depose witnesses, (4) refusal to consult with Petitioner and discuss strategy, and (5)

[4] Later in his PCM, Petitioner reiterated his prior arguments, again alleging that:

> [Petitioner's] counsel failed to be truthful and forthright with regard to the State's intent, and actual legal grounds, to amend the information charging him to include habitual offender allegations. [Trial] counsel further misadvised [Petitioner] on the discretionary sentencing structure available to the Court regarding particular offenses, and, in fact, [trial] counsel stated to [Petitioner] that the Court had to make his sentences on the first two counts concurrent with one another. Because the Judge failed to advise [Petitioner], during Balkanization [sic], of the potential consecutive sentence structure, and by extension the possible range of the sentence, and [trial] counsel failed to object to the Courts [sic] error in that respect, the misadvice had an obvious detrimental effect on [Petitioner's] ability to make a knowing, informed decision on whether to accept the plea offer causing him substantial prejudice.

Filing No. 40-19 at 11.

failure to prepare for trial. *Id.* at 15. And because the state appellate court declined to assess his ineffective assistance of counsel claims on direct appeal due to lack of an adequate record, Petitioner also sought an evidentiary hearing to develop the Imbedded IAC Claims. *Id.* at 31–32.

**2. The PCM denial**

On February 4, 2014, the district court summarily denied the PCM in its entirety, finding that Petitioner alleged only conclusions of law and fact, the "records and files in the case affirmatively show that the [Petitioner] is entitled to no relief," and the claims were known or knowable to Petitioner at the time of the Direct Appeal and are therefore procedurally barred (the "PCM Denial"). *Id.* at 35.

**3. The PCM appeal**

On July 10, 2014, Petitioner, proceeding pro se, appealed the PCM Denial (the "PCM Appeal"), raising the following four assignments of error: (1) trial court error for failing to find that Petitioner was deprived of the effective assistance of direct appellate counsel when direct appellate counsel failed to assign numerous trial counsel and trial court errors in the Direct Appeal; (2) trial court error for failing to find the sentencing court issued an unconstitutional determinate sentence; (3) trial court error for failing to find ineffective assistance of direct appeal counsel for failure to raise a claim regarding Petitioner's consecutive sentencing; and (4) trial court abuse of discretion for holding Petitioner responsible for claims direct appellate counsel should have raised, but did not.[5]

[5] In support of his ineffective assistance of trial counsel claims, Petitioner alleged his nolo contendre plea was involuntary and unlawfully induced by trial counsel's erroneous and misleading advice as he was not informed of the sentencing risks of a nolo contendre plea, trial counsel erroneously explained to him that the state could use the first two felony convictions to enhance the third. *Id.* at 25-26. He realleged his claim that the trial court failed to act when he informed the court he was misadvised by trial counsel regarding the consequences of accepting the nolo contendre plea. *Id.* at 28–31. Petitioner also reiterated his claim that

Filing No. 40-11 at 3–4. Petitioner argued that the state district court's failure to grant him an evidentiary hearing denied him the right to show trial counsel's performance was deficient and that the deficient performance prejudiced him. *Id.* at 23. He further alleged that the PCM Denial failed to allow him to conduct a deposition of trial counsel, denying him the right to "fully adjudicate his claims in the postconviction proceeding" including his Imbedded IAC Claims. *Id.* at 26, 32.

**4. The partial remand**

On April 21, 2015, the Nebraska Court of Appeals affirmed the PCM Denial in part but remanded the matter to the district court to hold an evidentiary hearing only on the portion of Petitioner's ineffective assistance of trial counsel claims initially raised in his Direct Appeal (the "Partial Remand Order"). Filing No. 40-5. In so doing, the court found that Petitioner "sufficiently raised assertions concerning the effectiveness of his trial counsel and that the district court erred in denying an evidentiary hearing" but that there were no merits to Petitioner's claims regarding his sentence. *Id.* at 1. In addressing his ineffective assistance of appellate counsel claims the state appellate court made the following findings:

> With respect to his appellate counsel, [Petitioner] argues in his brief on appeal that the district court erred by failing to find ineffective assistance "when appellate counsel failed to assign numerous errors committed by trial counsel throughout the criminal prosecution." [Petitioner] presents more than 10 pages of argument concerning trial counsel's advice to [Petitioner] to enter no contest pleas.
>
> To the extent [Petitioner] is asserting on appeal that his appellate counsel was ineffective for failing to raise on direct appeal assertions that trial counsel had been ineffective for providing incorrect advice related to [Petitioner's] plea, the argument on appeal is without merit. In our prior

---

the failure to raise all of the ineffective assistance of trial counsel claims was the result of his direct appellate counsel's failure to do so in his Direct Appeal. *Id.* at 32–35, 50–53.

> opinion affirming [Petitioner's] conviction and sentences, we specifically discussed [Petitioner's] appellate counsel's assertions that [Petitioner's] trial counsel had been ineffective for allegedly providing incorrect advice related to the plea. *See State v. Jones*, *supra*. We declined to review that assertion concerning trial counsel because the record was insufficient. *Id*. Appellate counsel could not have been ineffective for failing to raise an issue that appellate counsel clearly did raise. *See State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012).
>
> Accordingly, to the extent [Petitioner's] motion for postconviction relief asserted that his appellate counsel was ineffective for failing to raise issues on direct appeal, that assertion lacks merit. The district court did not err in refusing to grant an evidentiary hearing regarding the assertions made by [Petitioner] about his appellate counsel.

*Id.* at 3.

Although all of Petitioner's ineffective assistance of trial counsel claims alleged in the PCM were brought as imbedded ineffective assistance of trial counsel claims, the court found that some of the claims raised were adequately presented as freestanding ineffective assistance of counsel claims, finding as follows:

> [Petitioner] also included in his motion for postconviction relief a variety of assertions about his trial counsel. In denying an evidentiary hearing, the district court held that [Petitioner's] motion alleged only conclusions, that the records and files affirmatively showed no entitlement to relief, and that his claims were known or knowable at the time of his direct appeal and were, therefore, procedurally barred. We disagree.
>
> [Petitioner] presented his motion for postconviction relief pro se. It is inartfully presented. Nonetheless, we conclude that a reasonable reading of the motion includes assertions that his trial counsel was ineffective in ways that were raised by his appellate counsel on direct appeal. On direct appeal, we specifically declined to address claims on the basis of the record then being insufficient. [Petitioner] specifically noted in his motion that he "seeks to expand the record through postconviction in order that the court can fairly and 'meaningfully assess' the ineffective assistance claims."
>
> An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitutions, causing the judgment against the movant to be void or voidable. *State v. Cook*, 290 Neb. 381, —— N.W.2d —— (2015). An

> evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law. *State v. Cook*, *supra*.
>
> Contrary to the district court's conclusion, [Petitioner's] motion did not allege only conclusions of fact and law. [Petitioner] included specific assertions concerning his trial counsel, what he believed to constitute deficient performance, and how or why that performance resulted in him entering a plea instead of insisting on going to trial.
>
> The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity. *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014). A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *Id.*
>
> In his direct appeal we specifically recognized that he raised assertions concerning the effectiveness of his trial counsel concerning counsel's advice that [Petitioner] enter into a plea agreement. We concluded that the record was insufficient and declined to address the merits of those claims. [Petitioner] did not waive these assertions because they were known or knowable at the time of his direct appeal—he raised them as he needed to, the record was insufficient, and he now raises them in postconviction as he needed to.
>
> The State has acknowledged on appeal that if this court concludes that [Petitioner] has sufficiently, although inartfully, raised issues concerning the effectiveness of his trial counsel, then "an evidentiary hearing would be required." We reverse the district court's conclusion that [Petitioner] did not sufficiently raise these issues or that they were procedurally barred, and we remand for further proceedings.

Id. at 3–4 (internal citations to the state court record omitted).

Petitioner did not file a petition for further review of the Partial Remand Order. *See* Filing No. 60 at 8–11. The mandate was issued on May 27, 2015. Filing No. 40-22 at 206. The order on the mandate was entered on June 2, 2015. *Id.* at 207.

**5. The remand proceedings**

**a. Pre-evidentiary hearing motions**

On December 1, 2016, Petitioner was appointed Greg Pivovar as counsel to represent him at the evidentiary hearing on the "limited issues" set forth in the mandate

on remand. Filing No. 40-22 at 222. On January 31, 2017, Petitioner filed a pro se motion for leave to amend the PCM, seeking to clarify his claims due to the state appellate court's discussion of the PCM in the Partial Remand Order as "inartfully presented" (the "Motion to Amend"). *Id.* at 291. Specifically, Petitioner submitted that he filed the Motion to Amend to "provide the Court with a more concise and definitive statement of the facts or cause of action on the defendant's claim of ineffective assistance of trial counsel." *Id.* In conjunction with the Motion to Amend, Petitioner filed an Amended Verified Petition for Postconviction Relief (the "Proposed Amended PCM"). *Id.* at 225–88, 294. In the Proposed Amended PCM Petitioner alleged that his trial counsel:

> (1) failed to investigate witness James Henley, request D.N.A. analysis, or fingerprint comparison on firearm retrieved by Omaha Police; (2) failed to provide documents, transcripts, video footage to allow petitioner to prepare adequate defense for trial; (3) lacked adversarial challenging and inadequate arguments for identification suppression hearing; (4) failed to challenge false statements made by [t]he States witnesses during identification suppression hearing; (5) never notified the [P]etitioner that he could appeal the ruling of the District Court denying suppression to a higher court; (6) told the petitioner to stop attending law library while in Douglas County Corrections awaiting trial; (7) told the [P]etitioner's fiancé the [P]etitioner was guilty of crimes alleged; (8) failed to investigate [P]etitioner[']s alibi for the time of the crimes in question; (9) scheduled court dates for the [P]etitioner to change his plea without any request being made by the [P]etitioner; (10) had inadequate knowledge of the State statutes and the application thereof; (11) misrepresented the actual amended information that was filed against [P]etitioner on July 25, 2011 to the [P]etitioner and his fiance; (12) told the [P]etitioner the District Court did not want to preside over his trial the week of August 1, 2011 and the District Court "would not forget" the [P]etitioner after his plea was accepted by the District Court and during sentencing; (13) gave [P]etitioner erroneous advice regarding habitual criminal enhancements; (14) gave the [P]etitioner erroneous advice regarding direct consequences and penalties the [P]etitioner was subject to due to his No Contest plea; (15) failed to motion for the District Court's recusal from the [P]etitioner[']s case; (16) failed to object to the State's misleading factual basis during plea proceedings[;] (17) allowed the [P]etitioner to plead No Contest to a crime where the statutory requirements were not satisfied to support the conviction thereof; (18) failed to properly investigate injury to D'Anthony Betts; (19) made false statements

> to the District Court regarding pre-sentence investigation meeting between the [P]etitioner and the probation officer that conducted the interview of the [P]etitioner; (20) failed to object or clarify when the District Court sentenced [P]etitioner under a mistake of law; (21) allowed the District Court and the prosecution to communicate in ex-parte communication regarding the sentence of the [P]etitioner after the sentencing hearing was adjourned and the [P]etitioner had exited the courtroom.

*Id.* at 227–29.

Following a hearing on July 10, 2018, the Motion to Amend was overruled and denied by the state district court on July 12, 2018. *Id.* at 298.

On July 20, 2018, Petitioner filed a motion to alter or amend the judgment on the Motion to Amend (the "Motion to Alter Judgment"). *Id.* at 299–301. Petitioner argued that the Motion to Amend was denied due to an erroneous finding that the PCM was unable to be amended as the court was confined to the mandate of the state appellate court in the Partial Remand Order. *Id.* at 299. Petitioner argued that the purpose of amending the PCM was not to expand the petition or otherwise circumvent the mandate but was instead filed to "cure deficiencies mentioned by the [state appellate court], on the . . . ineffective assistance of counsel issue." *Id.* at 300. Petitioner further argued that although under Nebraska law he could not bring new claims, that he was not precluded from refining issues within the mandate issued. *Id.*

The state district court summarily denied the Motion to Alter Judgment, finding amendment unavailable as the court was "confined to the mandate" in the Partial Remand Order. *Id.* at 303.

**b. The evidentiary hearing**

The district court scheduled an evidentiary hearing for additional testimony on the remanded claims. *Id.* at 315. Although Petitioner sought to expand the record at the

evidentiary hearing to including the following: (1) a transcript from a December 16, 2010, identification suppression hearing, (2) a transport order for Petitioner's transportation from Douglas County Corrections to the Douglas County Courthouse for the month of July 2011, (3) slips signed by Petitioner at Douglas County Corrections for the month of July 2011 showing that Petitioner refused to be transported from Douglas County Corrections to the Douglas County Courthouse, and (4) an affidavit of potential alibi witness Derin Greene ("Greene"), *id.* at 327–28, the evidence taken was limited to Petitioner's own deposition, the deposition of trial counsel, the live testimony of Greene, and the deposition testimony of the two victims (Betts and Biggs), *see* Filing No. 40-6 at 2 (discussing the evidence the district court allowed for presentation at the evidentiary hearing).

**6. The Remanded PCM denial**

Following the evidentiary hearing, on February 3, 2020, the district court entered an order denying the remanded claims (the "Remanded PCM Denial"). Filing No. 40-22 at 349–54. Conspicuously, the court noted that the Partial Remand Order was less than clear as to what claims were remanded, providing "no further insight as to what specific allegations warranted an evidentiary hearing" aside from a paragraph concluding that Petitioner "inartfully" raised multiple claims of ineffective assistance of trial counsel which were also raised in the Direct Appeal and warranted further development. *Id.* at 350 (citing *State v. Jones*, 2015 WL 1858863, *3 (Neb. Ct. App. 2015)). The court noted it also found Petitioner's ineffective assistance of counsel claims "difficult to discern," ultimately determining that the court was required to address ineffective assistance of trial counsel claims of "promises related to sentencing" and "overall failures in investigation" only. *Id.* at 351–53.

Ultimately, the court found that trial counsel Kahler was the more credible witness, crediting more weight to trial counsel's testimony that he had not made Petitioner any promises regarding his sentences (as opposed to Petitioner's contention that trial counsel did make such promises). The court further found that trial counsel had made reasonable investigations before advising Petitioner to enter his plea, that Petitioner had failed to allege what additional evidence trial counsel should have gathered, and, if the evidence trial counsel should have gathered would have been exculpatory, how the "exculpatory" evidence would have been found or how it would have impacted Petitioner's decision to enter a plea rather than go to trial. In light of these findings and the strength of the evidence presented against Petitioner in securing his conviction, the court found that Petitioner had failed to prove either the performance or prejudice prong of *Strickland* and denied his claim. *Id.* at 351–54.

**7. The Remanded PCM appeal**

Petitioner timely filed his notice of appeal of the Remanded PCM Denial on February 28, 2020, *id.* at 356, filing his brief in support on July 30, 2020, with the assistance of counsel Justin A. Quinn (the "Remanded PCM Appeal"), Filing No. 40-13. In his brief in support, with counsel's assistance, Petitioner argued that the state district court (1) abused its discretion in denying his Motion to Amend resulting in his inability to file his Proposed Amended PCM and (2) erred by failing to find trial counsel was deficient and that "but for those deficiencies [Petitioner] would not have accepted the plea agreement" and that (3) Petitioner received ineffective assistance of postconviction counsel. *Id.* at 7.

In support of his argument that the trial court erred in denying his Motion to Amend and Motion to Alter Judgment, Petitioner pointed out that the state appellate court in its Partial Remand Order remarked the PCM was inartful and that by amending he could clarify his claims in the PCM. *Id.* at 9–10. In support of his second claim, Petitioner appeared to argue that the state district court's finding that trial counsel's performance was not deficient was based on what Petitioner contended was an erroneous conclusion that trial counsel Kahler was more credible than Petitioner. *Id.* at 12–25. Petitioner argued that the state district court failed to consider all the ways trial counsel failed to adequately prepare for and investigate Petitioner's case, including failing to provide Petitioner with proof that the victim's depositions were taken, failing to depose Henley and Greene, failing to keep Petitioner informed as to the status of his case, failing to have DNA retrieved, failing to have medical exams performed on the victims, failing to inform Petitioner that going to trial would allow him to appeal the denial of the motion to suppress, failing to be forthcoming about the amended information, failing to give Petitioner adequate time to make a decision about making a plea, failing to accurately inform Petitioner of the consequences of making a plea, and erroneously promising Petitioner a sentence reduction if he entered a plea. *Id.* at 17.

In support of his ineffective assistance of post-conviction counsel claim, Petitioner submitted that his postconviction counsel failed to: ensure that a record was made of the Motion to Amend pleadings, depose all parties Petitioner sought to depose including the alleged victims and Henley, obtain transport records from Douglas County Corrections to support Petitioner's argument (and contradict trial counsel's deposition testimony) that Petitioner was ill-prepared and was hesitant about entering a plea, question Greene about

being an alibi witness for Petitioner (despite her affidavit that claims Petitioner was with Greene at the time the crimes for which Petitioner was convicted occurred), pursue Kahler's deficiencies at sentencing, and communicate with Petitioner during the remanded proceedings. *Id.* at 25–27.

**8. The state appellate court's denial of the Remanded PCM Appeal**

The Nebraska Court of Appeals affirmed the state district court's judgment on January 5, 2021 (the "Remanded PCM Appeal Denial"), Filing No. 40-6, finding that the district court correctly found that it was confined to the appellate court's mandate, that the district court did not commit clear error in finding that trial counsel's testimony regarding the circumstances surrounding Petitioner's plea entry was more credible than Petitioner's, and that Petitioner's claims regarding ineffective assistance of postconviction counsel were without merit as there is no constitutional right to effective assistance of counsel in postconviction proceedings. *Id.*

Relevant to his later arguments involving his ineffective assistance of trial counsel claims, the appellate court found the following:

> On remand, the mandate from this court in [the Partial Remand Order] directed the district court to hold an evidentiary hearing on the sole issue of whether [Petitioner's] trial counsel had rendered ineffective assistance in advising [Petitioner] to enter a plea. Therefore, [Petitioner's] postconviction counsel could not have been ineffective for failing to (1) conduct depositions of the victims and witnesses; (2) investigate corrections transport records; (3) investigate alibi evidence; or (4) make postconviction arguments related to trial counsel's performance at the sentencing hearing. These issues are all beyond the scope of the mandate, and on appeal, [Petitioner] does not specify how these factors relate to the relevant issue--that is, whether trial counsel pressured [Petitioner] or misadvised him in order to induce him to enter a plea. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018).

> [Petitioner's] fifth argument, that his postconviction counsel was ineffective for failing to make a record of the hearing on his motion to file an amended postconviction motion, also fails. As we discuss above, the district court correctly found that it was limited by this court's mandate on remand and did not abuse its discretion in denying [Petitioner's] motion to amend.

*Id.* at 6–7 (internal citations to the state court record omitted).

**9. The petition for further review**

On February 2, 2021, Petitioner filed a petition for further review with the Supreme Court of Nebraska (the "Remand PFR"). Filing No. 40-16. In his Remand PFR Petitioner raised the following errors:

> I. The Court of Appeals incorrectly decided that the trial court did not abuse its discretion in preventing the [Petitioner] from Amending his pleadings.
>
> II. The Court of Appeals incorrectly decided that [Petitioner's] trial counsel was not ineffective.
>
> III. The Court of Appeals incorrectly decided that [Petitioner's] Post-Conviction counsel was not ineffective.

*Id.* at 2.

Specifically, in relation to his ineffective assistance of trial counsel claim, Petitioner argued that the district court erred in "assigning any credibility to [trial counsel's] testimony."[6] *Id.* at 5. Then, he contended that the lower courts had failed to seriously consider any of the following deficiencies of trial counsel: (1) failure to pursue an alibi defense involving witness Greene, (2) failure to take the deposition of Henley, (3) failure to obtain DNA evidence from the firearm, (4) failure to obtain medical reports regarding the nature of the victim's injuries as a possible defense, (5) failure to provide Petitioner with the order on the motion to suppress, (6) failure to advise Petitioner that he would be

---

[6] Petitioner also alleged that a review of the jail transport records would have shown that twice Petitioner refused to attend court for a scheduled plea, supporting his position that he was not inclined to plead guilty. Filing No. 40-16 at 9.

able to challenge the identification testimony if he proceeded to trial but not if his plea was accepted, (7) instructing Petitioner to discontinue going to the law library and to stop attempting to educate himself about the law applicable to him and his case, (8) failure to spend adequate time with Petitioner to properly inform Petitioner of his rights and options, (9) failure to adequately discuss Petitioner's potential plea, especially in light of Petitioner's refusals to attend multiple change of plea hearings, (10) failure to advise Petitioner that the "use of a firearm" charge carried a mandatory minimum of five years and failure to advise him of the $25,000 fine associated with the charge of assault in the second degree, (11) improperly advising Petitioner that if he did not plead guilty Petitioner would be eligible to be sentenced as a habitual criminal, and (12) improperly advising Petitioner that if he pleaded guilty he would receive a lighter sentence and that the sentence on the assault charges would run concurrently with other charges. *Id.* at 7–8.

Petitioner also contended that the court of appeals, in denying his ineffective assistance of postconviction counsel claim, erred in doing so as it misread his claim as alleging that his postconviction counsel was ineffective for failing to: (1) conduct depositions of the victims and witnesses; (2) investigate corrections transport records; (3) investigate alibi evidence; or (4) make postconviction arguments related to trial counsel's performance at the sentencing hearing. *Id.* at 9. Instead, Petitioner clarified that the claim he raised in the Remanded PCM Appeal was an ineffective assistance of postconviction counsel claim for the failure to perform the depositions and investigations during his representation of Petitioner postconviction that trial counsel also should have undertaken during Petitioner's trial. *Id.*

Petitioner explained that the state appellate court "misse[d] the entire scope of the argument that [Petitioner] was making, that his trial counsel[']s deficiencies all added up to cause [Petitioner] to enter a plea when he would not otherwise have done so" and that these claims were all part of his ineffective assistance of postconviction counsel claim. *Id.* He reiterated that the overall lack of care trial counsel took generally in his representation of Petitioner included his claims that trial counsel: failed to conduct the deposition of Greene as an alibi witness, failed to properly investigate Petitioner's case resulting in advice to plead guilty which was poorly informed (and that the lack of evidence contradicts trial counsel's advice), and failed to correct the trial judge at sentencing (presumably regarding the concurrent sentences). *Id.* And finally, Petitioner contended that his postconviction counsel failed to maintain contact with Petitioner "to such a degree that it prevented him from effectively presenting his [PCM]." *Id.* at 10.

**10. The Remand PFR denial**

The Nebraska Supreme Court denied the Remand PFR on March 1, 2021, and the case was mandated. *See* Filing No. 40-3 at 4.

**D. Federal Habeas Proceedings**

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 which was signed and dated June 6, 2021, and received by this court on July 7, 2021 (the "Petition"). Filing No. 1.

On September 21, 2021, Respondent filed a motion for summary judgment and brief in support, raising the sole issue that the Petition was barred by the statute of limitations and was therefore untimely. *See* Filing Nos. 15 and 17. The summary judgment motion was denied, an evidentiary hearing on the timeliness issue was granted,

and Jennifer L. Gilg of the Federal Public Defender's Office was appointed to represent Petitioner in this matter. Filing No. 31. The timeliness issue was later resolved by the parties via joint stipulation where Respondent effectively withdrew his timeliness argument, Filing No. 34, and a new progression order was entered, Filing No. 36, which was amended the following day, setting a new briefing schedule for the parties, Filing No. 37.

Petitioner, with the assistance of his current appointed counsel, filed an Amended Petition, Filing No. 43, and a motion for evidentiary hearing seeking to excuse any procedural defaults and expand the record on multiple ineffective assistance of counsel claims (the "First Evidentiary Hearing Motion"), Filing No. 44. In his First Evidentiary Hearing Motion, Petitioner sought an evidentiary hearing on his ineffective assistance of trial counsel claims as set forth in Claims Two, Three, and Four, and two ineffective assistance of direct appellate counsel in Claims Seven and Eight of the Amended Petition. Filing No. 44 at 1. Respondent filed a response in opposition to the Motion, arguing the Motion was premature as briefing on the Amended Petition was not yet complete. Filing No. 45. This Court agreed and the Motion was stayed until after briefing on the Amended Petition was complete. *See* Filing Nos. 46 and 55. In lifting the briefing stay on the Motion, the Court acknowledged that the parties had addressed the issues raised in the Motion in their briefing addressing the Amended Petition. Filing No. 55 (citing Filing Nos. 51 and 52). However, the Court ordered supplemental briefing on the Motion, *id.* at 5, to which the parties complied, *see* Filing Nos. 60 and 64.

This Court denied the First Evidentiary Hearing Motion in its entirety but sua sponte granted Petitioner leave to file a new motion for evidentiary hearing addressing the

potential development of any claims which Petitioner believed were properly presented to the state courts but were never considered on their merits. Filing No. 65 at 43. It is the Second Motion for Evidentiary Hearing filed by Petitioner, which is fully briefed, *see* Filing Nos. 68, 69 & 70, as well as the Amended Petition, Filing No. 43, that are currently before this Court.

## III. LEGAL STANDARD

As set forth in 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A) the applicant has *exhausted the remedies available in the courts of the State*; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (emphasis added).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska

Supreme Court directly[7] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner initially. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005). Relevant here, where a criminal defendant has different trial counsel than on direct appeal, all known claims of ineffective assistance of trial counsel must be raised on direct appeal[8] and then proceed through a full round of review by the state courts. *State v. Marshall*, 725 N.W.2d 834, 838 (Neb. 2007) ("the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity.") (citing *State v. Dandridge*, 651 N.W.2d 567 (Neb. 2002)); *see also Mathiasen v. Jeffreys*, No. 8:25CV297, 2026 WL 837301, at *5 (D. Neb. Mar. 26, 2026) (explaining that generally in Nebraska ineffective assistance of trial counsel claims must be raised on direct appeal).

However, fair presentation also requires presenting the substance of each federal constitutional claim to a full round of review in the state courts before seeking federal habeas corpus relief. This requires a petitioner to have "referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation omitted).

As such, to exhaust a claim raised in a federal habeas petition by fair presentation and permit review of its merits by the federal courts, a claimant must have presented a

[7] Where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

[8] However, where a defendant has the same counsel at trial as on direct appeal such claims cannot be raised until postconviction as "[c]laims of ineffective assistance of counsel raised on direct appeal by the same counsel who represented the defendant at trial are premature and will not be addressed on direct appeal." *State v. Dunster*, 769 N.W.2d 401, 410-11 (Neb. 2009).

claim which relies upon the "same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition[,]" *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (internal quotation and citation omitted), and submitted that same claim to a full round of state court review. It is the briefs of a federal petitioner to the state courts that determines whether a claim has been fairly presented, not the state court's interpretation of the claim (or the failure of the state courts to address it). *Dye v. Hofbauer*, 546 U.S. 1, 4 (2005).

Conversely, federal review of a habeas petitioner's claims is precluded when the petitioner fails to exhaust his claims by giving them a full round of review in the state courts or if the state court dismisses or rejects a prisoner's claims on independent and adequate state grounds[9] unless the petitioner can demonstrate either (1) cause and prejudice or (2) actual innocence.[10] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

[9] Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

[10] To invoke the actual innocence exception, a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Jennings v. United States*, 696 F.3d 759, 764-65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). However, as Petitioner does not raise actual innocence as a pathway to excusing any procedural default, the doctrine shall not be discussed further here.

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

## IV. DISCUSSION

While Petitioner raises eight claims with multiple subparts, the only claims/subparts raised in the Petition that the parties agree are exhausted and reviewable on their merits are the ineffective assistance of trial counsel claims alleged in Subparts (2) through (4) of Claim One, portions of Claim Two, Subpart (1), and all of Claim Two, Subpart (2). *See* Filing No. 48 at 9, 13, 17. The parties disagree regarding whether Petitioner's remaining claims are exhausted and reviewable on their merits (the "Contested Claims") or whether they are procedurally defaulted and, therefore, outside the scope of this Court's review. As such, this Court shall first make a procedural default determination as to each of the Contested Claims and, where applicable, determine if any procedural defaults may be excused.[11] Then the Court shall address the merits of the aforementioned portions of Claims One and Two, as well as any of the Contested Claims where appropriate.

[11] This Court already determined that, to the extent any of Claims Two, Three, Four, Seven, or Eight are procedurally defaulted, their defaults cannot be excused. *See* Filing No. 65. As such, excuse of procedural default for those claims shall not be addressed further in this Memorandum and Order.

**A. The Contested Ineffective Assistance of Counsel Claims**

Respondent argues that the ineffective assistance of counsel claims alleged in Claim One, Subpart (1), Claim Two, Subparts (1)[12] and (3), and all of Claims Three, Four, Seven, and Eight were not exhausted by fair presentment to the state courts and are therefore procedurally defaulted. Filing No. 48 at 13, 18-20. Specifically, Respondent contends that the factual and legal arguments presented in these claims were either never raised to the state courts or were not exhausted via one full round of review before the state courts and therefore must be dismissed as procedurally defaulted. *Id.*

As Petitioner's trial and direct appellate counsel were different, any ineffective assistance of trial counsel claims should have been raised in Petitioner's Direct Appeal. However, the failure to raise such a claim on direct appeal may be excused via bringing a postconviction motion alleging ineffective assistance of direct appellate counsel for failing to raise ineffective assistance of trial counsel claims on direct appeal. However, such claims may provide an excuse only if they were also exhausted on their merits. *See Murray v. Carrier*, 477 U.S. 478 (1986) (observing that the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); *Beaulieu v. Minnesota*, 583 F.3d 570 (8th Cir. 2009).

Here, Petitioner raised ineffective assistance of trial counsel claims in his Direct Appeal and via the Imbedded IAC Claims in his PCM. Thus, this Court must consider

[12] Respondent argues that the portions of Claim Two, Subpart (1) alleging that trial counsel failed to arrange for a fingerprint analysis of the firearm used in the incident and that trial counsel failed to obtain expert testimony regarding the injuries sustained by the victims are procedurally defaulted. Filing No. 48 at 18. While the Court shall refer to Subpart (1) for purposes of addressing Respondent's procedural default argument in this section, the Court recognizes the parties agree that the remaining portion of Claim Two, Subpart (1) was exhausted and shall be reviewed on its merits later in this Memorandum and Order.

both the Direct Appeal and the PCM when determining if any of the Contested Claims alleging ineffective assistance of trial counsel were raised at all and, if so, if they received a full round of review before the state courts.

**1. Claim Two, Subparts (1) and (3)**

In Claim Two, Subpart (1), Petitioner alleges ineffective assistance of trial counsel for failure to arrange for a fingerprint analysis of the firearm used in the incident or obtain expert testimony regarding the injuries sustained by the victims. In Claim Two, Subpart (3), Petitioner alleges ineffective assistance of trial counsel, for failure to vigorously challenge the State's identification testimony. While Petitioner argues that these claims were fairly presented because they were raised in his Direct Appeal and as imbedded IAC claims in his PCM, *see* Filing No. 69 at 2, this Court disagrees.

A review of Petitioner's Direct Appeal establishes that the totality of the ineffective assistance of trial counsel claims raised addressed the alleged pressure Petitioner received from his trial counsel to accept a plea agreement (as opposed to going to trial) without adequate time or information upon which to do so. Filing No. 40-7 at 16. Specifically, Petitioner argued that his trial counsel gave him about 5 minutes to decide whether or not to accept a plea on the eve of trial and informed him that his sentence would be negatively impacted if he proceeded to trial (including being sentenced as a habitual offender), in part due to the trial court's vacation schedule. *Id.*

While a claim brought in a federal habeas proceeding need not be "an exact duplicate of the one raised in the state court proceeding" to be fairly presented, *Ward v. Norris*, 577 F.3d 925, 935 (8th Cir. 2009) (internal quotation omitted), fair presentment has been described as requiring presenting the state court system "with the same facts

and legal theory upon which the petitioner bases his current assertions." *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (citing *Picard*, 404 U.S. at 275-77). Moreover, a state court must be "sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis," which would in turn allow for review in a federal habeas proceeding. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013) (quoting *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)).

Allegations that Petitioner's counsel failed to challenge the identification testimony presented by the State, failed to obtain a fingerprint analysis of the firearm at issue in the criminal case against Petitioner, or should have obtained expert testimony in relation to the victims' injuries were not part of Petitioner's Direct Appeal. And, this Court finds no merit in the argument that these claims were somehow indirectly part of the ineffective assistance of trial counsel claim actually raised in his Direct Appeal relating to trial counsel's actions regarding Petitioner's acceptance of the plea.

Petitioner, however, also contends that these claims were fairly presented and exhausted postconviction, as they were contained within the Imbedded IAC Claims raised in the PCM. Filing No. 69 at 2. While this Court agrees that Petitioner was entitled to raise ineffective assistance of counsel claims from his Direct Appeal as well as additional imbedded ineffective assistance of trial counsel claims in his PCM, a review of Petitioner's PCM claims establishes that neither the contested portion of Claim Two, Subpart (1) nor Claim Two, Subpart (3) were fairly presented or received a full round of review.

Relevant to the firearm and identification testimony challenge, Petitioner alleged the following in his PCM via the Imbedded IAC Claims: trial counsel's refusal to investigate information surrounding the charged offenses, refusal to depose witnesses, and a general

failure to adequately prepare for trial. Filing No. 10-4 at 15. However, in support of these general arguments Petitioner never mentioned fingerprint analysis of the firearms or the identification testimony. *See* Filing No. 10-4. This is simply not enough to put the state court on notice of these claims.

Instead, the first time any specific mention of these claims occurred was only after the PCM was filed, denied by the state district court, and then later partially remanded, when Petitioner included them in his Proposed Amended PCM, which was filed in conjunction with his Motion to Amend the PCM in the remand proceedings. While Petitioner sought to amend his PCM to "clarify" his claims, the district court denied the Motion to Amend, specifically finding that the Proposed Amended PCM attempted to raise claims which were outside the mandate of the Partial Remand Order. The fact that Petitioner appealed the denial of the Motion to Amend to the state appellate court (the denial of which was also affirmed) and that he sought further review of that decision in his Remand PFR is of no help to him as this process was not a full round of review of the merits of the claims Petitioner raises in Subparts (1) and (3). Instead, what did receive a full round of review was the denial of Petitioner's motion seeking to Amend the PCM in the remand proceedings.

Because the merits of these claims were never raised to the state courts, the portion of Subpart (1) alleging trial counsel provided ineffective assistance of counsel for failing to arrange for a fingerprint analysis of the firearm used in the incident or obtain expert testimony regarding the injuries sustained by the victims and all of Subpart (3) of Claim Two are procedurally defaulted and shall be denied as outside of the scope of this Court's review. And finally, because these same claims are the sole subject of Petitioner's

Second Motion for Evidentiary Hearing, *see* Filing Nos. 68 & 69, the Second Motion for Evidentiary Hearing also must be denied as Petitioner's arguments in favor of expanding the record on these claims require them to have been exhausted by fair presentation to the state courts. As this Court finds they were not exhausted by fair presentation but instead were procedurally defaulted, the arguments presented in the Second Motion for Evidentiary Hearing are moot and the Second Motion for Evidentiary Hearing must be denied.

**2. Claim Three**

In Claim Three Petitioner argues that he received ineffective assistance of trial counsel due to his counsel's failure to seek to withdraw Petitioner's plea after Petitioner informed the court his plea was not made knowingly or intelligently. Filing No. 51 at 38. Petitioner contends that the "facts and substance" of Claim Three were fairly presented to the state courts in his Direct Appeal. *Id.*

In his brief in support of his Direct Appeal under the heading "Appellant Received Ineffective Assistance of Counsel," Petitioner cited to *Strickland* and argued that "[his] trial counsel pressured him to enter into the plea agreement that resulted in [him] entering his plea involuntarily, unintelligently, and without proper understanding." Filing No. 40-7 at 16. He further argued that he stated at sentencing that his plea was "ill-advised," "ill-informed," and presented to him approximately five minutes prior to what he believed would be an arraignment on an Amended Information. *Id.* A claim addressing counseling a defendant to accept a plea based on allegedly insufficient or incorrect information is not the same as a claim that counsel failed to withdraw a plea already accepted. As Claim Three was not presented in Petitioner's Direct Appeal, it is procedurally defaulted.

However, Petitioner contends that even if this claim was procedurally defaulted due to his failure to include it in his Direct Appeal, excuse is available via the Imbedded IAC Claim he raised in his PCM.[13] Filing No. 51 at 38-43. While an ineffective assistance of appellate counsel claim can provide cause to excuse the procedural default of a claim which should have been raised on direct appeal, as previously discussed, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted," nullifying its use as cause to excuse the procedural default of an underlying ineffective assistance of counsel claim. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Such is the case here.

Claim Three (like all of Petitioner's ineffective assistance of trial counsel claims raised in the PCM) were raised as Imbedded IAC Claims, including his claim that trial counsel failed to seek to withdraw his plea. Filing No. 40-19 at 14. However, while the PCM was initially denied in its entirety for a failure to meet Nebraska pleading standards, *see id.* at 35, the state appellate court partially reversed the lower court's findings via remanding some ineffective assistance of trial counsel claims. The Partial Remand Order, however, was less than clear regarding which specific claims were remanded, and which ones were not.

Specifically, the state appellate court denied all of Petitioner's ineffective assistance of direct appellate counsel claims and all of the Imbedded IAC Claims, *id.* at 3-4 (finding that "to the extent [Petitioner's] motion for postconviction relief asserted that his appellate counsel was ineffective for failing to raise issues on direct appeal, that

[13] Petitioner did raise this claim in his PCM, specifically alleging that trial counsel was "deficient when he failed to move to withdraw the plea after learning that [Petitioner] became aware of [trial counsel's] misadvice." Filing No. 40-19 at 12.

assertion lacks merit"), but then, ignoring Petitioner's presentation of all his ineffective assistance of trial counsel claims in the PCM as Imbedded IAC Claims, remanded the ineffective assistance of trial counsel claims he raised previously in his Direct Appeal, *see id.* at 4 (remanding the matter to address claims that "his trial counsel was ineffective in ways that were raised by his appellate counsel on direct appeal"). While a state court's interpretation of a claim (or their failure to address a claim) does not factor into this Court's fair presentation determination, *see Moss v. Jeffreys*, No. 8:20CV474, 2026 WL 613604, at *10 (D. Neb. Mar. 4, 2026) (citing *Dye*, 546 U.S. at 4), the state court's interpretation of which claims were remanded and which were not is relevant to determining how each claim could receive a full round of review. In this instance, therefore, this Court must look to Nebraska's rules of appellate procedure to determine the path which Petitioner should have taken to fairly present each claim raised in his PCM after the Partial Remand Order was entered.

In Nebraska, "[a] petition for further review and memorandum brief in support must be filed within 30 days after the release of the opinion of the Court of Appeals or the entry of the order of the Court of Appeals finally disposing of the appeal, whichever occurs later." Neb. Ct. R. App. P. § 2-102(F)(1). And, "no mandate will issue in any case during the time allowed for the filing of a motion for rehearing or petition for further review, or pending the consideration thereof." *See* Neb. Ct. R. App. P. § 2-114(A)(1).

Here, the Partial Remand Order disposing of the PCM Appeal was issued on April 21, 2015, Filing No. 40-5, and the mandate and corresponding district court order were issued on May 27, and June 2, 2015, respectively, *see* Filing No. 40-22 at 206-07. Petitioner had 30 days to file a petition for further review for any of the claims which were

not part of the mandate on remand, but instead of filing a petition for further review, all of Petitioner's attempts to address the claims raised in the PCM took place in the context of the remand proceedings. Therefore, only the claims initially raised in the Direct Appeal and PCM which were later remanded to the trial court received a full round of review, as their denial by the district court following the evidentiary hearing was then presented to the state court of appeals in the Remanded PCM Appeal, denied in the Remanded PCM Appeal Denial, and finally were presented in Petitioner's Remand PFR.

Put another way, any claims which were not remanded in the Partial Remand Order (such as Claim Three) had to make one final stop to be fully exhausted. Within 30 days of the issuance of the Partial Remand Order, Petitioner should have filed a petition for further review with the Nebraska Supreme Court regarding any of the un-remanded claims including the claim he now raises in Claim Three. Unfortunately for Petitioner, he did not.[14]

For these reasons, this Court finds Claim Three is procedurally defaulted, as it did not receive a full round of review by the state courts, and shall be denied.

**3. Claim Four**

In Claim Four, Petitioner alleges his trial counsel failed to correct or otherwise object to the sentencing court's understanding of sentencing law and object to discussions regarding Petitioner's sentence that occurred after the sentencing hearing was complete. Filing No. 51 at 67. Petitioner admits this claim was not, but should have

[14] While this Court understands that Petitioner, who was intermittently acting pro se during the postconviction process, was faced with the difficult task of understanding Nebraska's procedural rules in a situation where an unclear remand order made it difficult to ascertain how to proceed, this Court has already addressed this argument and found it is ultimately of no help to excuse Claim Three's procedural default. *See* Filing No. 65 at 36-38.

been, raised in his Direct Appeal, but contends that Claim Four's procedural default may be excused via the imbedded IAC claim raised in his PCM. *Id.* at 44.

However, as with Claim Three, because none of Petitioner's ineffective assistance of direct appellate counsel claims received a full round of review, and also for the same reasons this Court rejected this argument when denying Petitioner's First Motion for Evidentiary Hearing, *see* Filing No. 65 at 35, Claim Four is procedurally defaulted and must be denied.

**4. Claim Seven**

In Claim Seven, Petitioner alleges a non-imbedded claim of ineffective assistance of direct appellate counsel, arguing that direct appellate counsel rendered ineffective assistance for failing to argue Petitioner's plea was involuntary. Filing No. 51 at 58. While this claim was raised in his PCM, *see id.*, the state courts denied this claim, finding that direct appellate counsel had raised this claim in the Direct Appeal so he could not have been ineffective for failing to raise it, *see* Filing No. 40-5 at 3. As this claim was not remanded and Petitioner did not file a petition for further review following entry of the Partial Remand Order, this claim never received a full round of review by the state courts.

As such, Claim Seven must be denied as procedurally defaulted.

**5. Claim Eight**

In Claim Eight, Petitioner alleges a second non-imbedded claim of ineffective assistance of direct appellate counsel for failing to appeal the denial of the motion to suppress. Filing No. 51 at 67. Respondent contends that, to the extent Claim Eight was raised in the PCM, it is procedurally defaulted because it did not receive a full round of review. Filing No. 48 at 21. Respondent is again correct.

Similar to Claim Seven, the state district court clearly denied all non-imbedded ineffective assistance of direct appeal counsel claims in the PCM Denial, the state appellate court clearly affirmed that denial in the Partial Remand Order, and Petitioner did not file a petition for further review of the Partial Remand Order. Claim Eight, therefore, did not receive a full round of review by the state courts and also must be denied as procedurally defaulted.

**6. Claim One, Subpart (1)**

The final contested ineffective assistance of trial counsel claim is set forth in Claim One, Subpart (1). In this claim, Petitioner argues trial counsel was ineffective because he failed to accurately inform Petitioner of the strength of the evidence against him when advising Petitioner to accept the plea agreement. As this claim stems from the more general exhausted claim Petitioner raised in his Direct Appeal regarding trial counsel's failure to adequately counsel him before accepting the plea, whether this specific claim was fairly presented is a closer call.

Here, while the legal theory raised in the Petition is the same as that which was raised to the state courts, the facts Petitioner now argues were not previously raised. For example, Petitioner points to arguments he made to the state courts in his PCM alleging trial counsel withheld exculpatory evidence, refused to depose witnesses or consult with Petitioner, and did not adequately prepare for trial as support for his position that the claim he now raises is the same. Filing No. 51 at 23 (citing Filing No. 16-5 at 7). To the extent these issues were remanded as part of a "failure to investigate," nowhere in Petitioner's state court briefing does Petitioner discuss the strength of the evidence the State had against him. This is not the same claim as although the language need not be identical,

"[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999).

Moreover, fatal to Petitioner's claim even if it were reviewable on the merits, Petitioner still does not discuss the strength of the evidence in his Petition in relation to this claim and instead merely concludes that this alleged failure constitutes ineffective assistance. Petitioner wholly fails to discuss the details of the allegedly misrepresented evidence, instead concluding that knowing about it would have been relevant to his decision to proceed to trial in lieu of accepting the plea. As summary dismissal of a habeas claim is proper where the claim is "based solely on 'vague, conclusory or palpably incredible' allegations or unsupported generalizations[,]" *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)), and as this Court can only guess to the strength of the State's case that Petitioner was not informed of, even if this Subpart was reviewable on its merits, it would fail.

For these reasons, Claim One, Subpart (1), shall be dismissed.

**B. The Remaining Contested Claims – Claims Five and Six**

In Claim Five, Petitioner contends he was denied due process under the Fourteenth Amendment due to the trial court's "erroneous belief" consecutive sentences were required. In Claim Six, Petitioner raises a similar claim, alleging the district court violated his right to due process under the Fourteenth Amendment via accepting his involuntary plea. Respondent argues that both claims are procedurally defaulted as they were not raised in Petitioner's Direct Appeal. Filing No. 48 at 20.

Claim Six is easily disposed of. Petitioner admits that Claim Six was not raised in his Direct Appeal as it should have been, instead arguing its procedural default may be excused because Claim Six was raised as part of an ineffective assistance of direct appeal counsel claim. Filing No. 51 at 55. However, as already discussed, Petitioner's ineffective assistance of direct appeal counsel claims raised in the PCM were not exhausted due to his failure to file a petition for further review following the issuance of the Partial Remand Order. Therefore, even if this claim was raised in the PCM, it was not exhausted, rendering it procedurally defaulted and its merits outside the scope of review by this Court.

Regarding Claim Five, Petitioner contends the claim he now raises is the same claim he raised in his Direct Appeal and in his PFR, rendering it exhausted by fair presentation. Filing No. 51 at 47. Respondent disagrees, arguing that while Claim Five addresses the same issue raised in Petitioner's Direct Appeal, it is not legally similar because Petitioner's claim to the state courts was brought only under state law whereas Claim Five is brought under federal due process terms. *See* Filing No. 48 at 20. This Court agrees with Respondent.

In his Direct Appeal, Petitioner alleged the trial court abused its discretion in sentencing Petitioner due to erroneously believing it had to run Petitioner's sentences consecutively, citing to state law in support.[15] Filing No. 40-7 at 14-15. He now contends

[15] Petitioner cited to *State v. Smith*, 668 N.W.2d 482 (Neb. 2003) (citing state law when discussing abuse of discretion standards), *State v. Hurbenca*, 669 N.W.2d 668 (Neb. 2003) (citing state law when discussing when sentences imposed within the state statutory limits shall be overturned), *State v. Roeder*, 636 N.W.2d 870 (Neb. 2001) (same), *State v. Timmens*, 641 N.W.2d 383 (2002) (citing state law when discussing factors considered when determining the appropriateness of a sentence), and *State v. Vasquez*, 716 N.W.2d 443 (Neb. 2006) (discussing the imposition of a sentence during the course of a plea hearing under state law), all of which address state law.

that the language used in his Direct Appeal—"[he] had a right to be sentenced by a District Court that was making a sentencing decision consistent with the law . . . [and] free of ambiguity"—referred to a specific federal right. Filing No. 51 at 47-48 (citing Filing No. 40-[7][16] at 15).

Fair presentation of a claim in habeas requires more than presenting similar facts which could support a constitutional violation—a petitioner must also have presented similar *legal* arguments to the state courts. "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Instead, the fair presentation requirement is met if a petitioner refers to a specific federal constitutional right, a particular constitutional provision, or a federal or state case addressing the constitutional issue. *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997); *White v. Dingle*, 267 F. App'x 489, 492 (8th Cir. 2008) ("We have repeatedly held that a federal habeas petitioner does not fairly present a federal issue to the state courts unless he refers to a specific federal right or federal constitutional provision, or cites pertinent case law discussing the federal issue in question.").

Petitioner's Direct Appeal did not give such direction as Petitioner's vague references to "law" and "ambiguity" certainly are not enough to put the state courts on notice of any potential federally based claim. Moreover, Petitioner admits that he raised a claim that direct appeal counsel failed to raise the claim now presented in Claim Five

[16] While Petitioner references Filing No. 40-11, it appears from the quoted language that the reference to Filing No. 40-11 is a scrivener's error and the correct citation is Filing No. 40-7.

as a constitutional one in his PCM, clearly indicating Petitioner is aware this is a different claim. *See* Filing No. 51 at 49 (arguing that direct appellate counsel failed to properly present this claim as an issue of due process) (citing Filing No. 16-5 at 29). As such, Claim Five is procedurally defaulted as it was never presented to the state courts as a federal law claim.

Finally, although Petitioner contends that he can excuse any procedural default of Claim Five because he raised it via his ineffective assistance of appellate counsel claim in his PCM, *see* Filing No. 51 at 49, Claim Five suffers from the same deficiency as Claim Six: a failure to be subjected to a full round of review due to Petitioner's failure to file a petition for further review of the Partial Remand Order.

Therefore, because Claims Five and Six are procedurally defaulted and their procedural defaults cannot be excused, Claims Five and Six must also be dismissed.

**C. The Exhausted Claims**

The only claims reviewable on their merits by this Court are Claim One, Subparts (2) through (4), the remaining portion of Claim Two, Subpart (1), and all of Claim Two, Subpart (2).

Habeas relief is available for these claims only if their adjudication on the merits in state court resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020) (emphasis added) (citing 28 U.S.C. § 2254(d)). And as the claims at issue are all ineffective assistance of trial counsel claims, they must be reviewed under the two-part

test of *Strickland v. Washington*, whereby a federal habeas petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). Such claims are approached with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," such that "the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

With these concepts in mind, the Court now turns to the merits of these claims and finds that Petitioner is not entitled to relief.

**1. Claim One, Subparts (2)-(4)**

The allegations in Claim One, Subparts (2) through (4) revolve around Petitioner's contention that his trial counsel's performance, when counseling Petitioner to take a proposed plea agreement, was substandard and that Petitioner was prejudiced as a result under *Strickland*. Filing No. 43 at 5. He contends the state court's decision to deny these claims resulted from an unreasonable determination of facts and/or a misapplication of law. Filing No. 51 at 24-31.

While the state appellate courts initially declined to review these claims on direct appeal, Petitioner presented them in his PCM, and, upon remand, they were the subject of an evidentiary hearing where testimony from both Petitioner and his trial counsel was taken. After the evidentiary hearing concluded, the state district court, applying the performance prong of *Strickland*, found trial counsel's performance was reasonable for the following reasons:

> [Petitioner] testified that trial counsel did make promises regarding sentencing, but the Court finds trial counsel's testimony to be more credible.

> The Court also takes into account the answers provided by [Petitioner] during the plea colloquy. The Court advised [Petitioner] of the sentencing ranges and when asked if anyone had led him to believe he would receive probation or a lighter sentence for entering a plea, [Petitioner] stated "No, Your Honor." Additionally, the Court advised [Petitioner] of the penalties associated with his plea and he stated he understood the ranges. This record also refutes [Petitioner's] claims with regard to sentencing. *See State v. Dragon*, 287 Neb. 519, 843 N.W.2d 618 (2014) ("We have previously held that when a defendant had unequivocally represented to the court at the plea hearing that no promises were made by anyone regarding the sentence to be imposed, the defendant was not entitled to an evidentiary hearing on his postconviction claim to the contrary."); *State v. Vo*,.279 Neb. 964, 783 N.W.2d 416 (2010) ("The judge specifically asked Vo whether anyone had made any promises to him or represented to him what his sentence would be, and he said, "No." Having unequivocally represented to the court on the record that no promises were made by anyone regarding his sentence, Vo is not entitled to an evidentiary hearing on his postconyiction claim to the contrary.").

Filing No. 40-22 at 351-52 (internal docket references omitted).

In addressing the prejudice prong of *Strickland*, the court found that Petitioner failed to establish prejudice based on the strength of the evidence against him, the plea agreement taken, and that self-serving declarations that a defendant would go to trial are alone not evidence of prejudice. *Id.* at 353-54.

In affirming the denial, the state appellate court reasoned and found as follows:

> [Petitioner] assigns that the district court erred in finding that he did not receive ineffective assistance of counsel and in denying his motion for postconviction relief. He claims that the district court erred in finding the testimony of [Petitioner's] trial counsel to be credible and in accepting counsel's version of events over [Petitioner's] version.
>
> . . . .
>
> [Petitioner] argues that his trial counsel was ineffective when he advised [Petitioner] to accept the State's plea agreement. In his brief on appeal, [Petitioner] cites to 12 "failures" committed by trial counsel that led [Petitioner] to feel "he had no choice but to plead guilty." In his deposition, [Petitioner] testified that his trial counsel told him that if he failed to enter a plea, he "could be enhanced as a habitual offender" and that his counsel

inaccurately advised [him] that if he accepted the State's plea agreement, the sentence on the weapon charge could be ordered to be served concurrently to the assault sentences. [Petitioner] testified that he was never told that a sentence on a weapon charge must mandatorily run consecutively to any other charges. [Petitioner] also testified that there was at least one occasion when his counsel scheduled a hearing for him to enter a plea, but [Petitioner] refused to be transported to the courthouse.

In contrast, [Petitioner's] trial counsel testified that prior to the plea hearing, he did not makes [sic] [Petitioner] any promises regarding what sentence he would receive if he were to enter a plea. Counsel stated that he did not "threaten" [Petitioner] with habitual criminal enhancements because he did not think [Petitioner] was "habitual eligible" at that time. Trial counsel testified that he did not recall [Petitioner] ever refusing to be transported to the courthouse for any reason, and he stated he would remember if such an event had occurred. Trial counsel testified that in all his years of working as a criminal defense attorney, he "never set a plea without talking to a client beforehand and getting their blessing on it." Trial counsel additionally testified that if he had known [Petitioner] was having second thoughts, he would have filed a motion to withdraw the pleas prior to sentencing.

In its order denying [Petitioner's] motion for postconviction relief, the district court specifically found that the testimony of [Petitioner's] trial counsel was "more credible" than [Petitioner's] testimony. The court found "that there were no sentencing agreements and [that trial counsel] never relayed any to [Petitioner], nor did [counsel] give an opinion as to what he thought the sentence might be." The district court also took into account [Petitioner's] statements at the plea hearing, at which time [Petitioner] affirmed to the court that he understood the charges against him and the possible penalties. The district court advised [Petitioner] that a sentence on a weapon charge had "to run consecutive to any sentence on the underlying charge." At the plea hearing, [Petitioner] also asserted that no one had led him to believe he would receive probation or a lighter sentence in exchange for entering a plea.

[Petitioner] argues that the district court erred in crediting his trial counsel's testimony over his own. However, in an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). An appellate court upholds the trial court's findings unless they are clearly erroneous. *Id.* Here, the district court acknowledged that there was conflicting testimony on the issue of what advice [Petitioner's] trial counsel gave regarding the State's plea offer, and the court resolved the conflict in favor of trial counsel.

> We determine that the district court did not commit clear error when it found the testimony of [Petitioner's] trial counsel to be credible, ultimately finding that counsel had not made [Petitioner] any promises regarding what his sentence might be. We also note, as did the district court, that prior to entering his pleas, [Petitioner] affirmatively stated to the court that he understood the possible penalties he faced and that no one had made him any promises regarding potential sentences. We conclude that [Petitioner's] trial counsel was not ineffective. This argument fails.

Filing No. 40-6 at 4-6.

Petitioner now argues that the state appellate court's decision to deny relief was based on an unreasonable determination of facts, explaining that:

> [The state court] simply refused to believe that [trial counsel] had not met those standards. The state courts credited [trial counsel's] testimony that he made no promises with respect to [Petitioner's] final sentence. They believed him when he said that he never suggested the prosecution would bring a habitual criminal charge if [Petitioner] did not plead guilty. And they found credible his statement that the plea negotiations were concluded well ahead of the July 26 and accepted without complaint by [Petitioner].

Filing No. 51 at 27 (internal docket reference omitted).

While Petitioner must establish both that his trial counsel's performance was substandard and that he was prejudiced as a result, in this case the first hurdle Petitioner must pass in order to prevail on his claim is a more basic one: whether trial counsel actually failed to advise Petitioner of the statutory penalties for the charges, advised him of the applicability of the habitual offender enhancement, and discussed the sentence Petitioner would receive if he accepted a plea offer. However, the state court found, after considering the conflicting testimony of Petitioner, his trial counsel, and all the factual information Petitioner now reiterates to this Court, that trial counsel's testimony about what advice he actually gave Petitioner was more credible than Petitioner's testimony on that same issue. As a result the district court found that Petitioner's counsel's

performance was adequate, rendering the first prong of *Strickland* as unmet, and the claim without merit.

Petitioner recognizes this challenge as he now also attacks the state court's credibility finding by pointing to specific contradictions in the record, arguing that in order to reach a conclusion that Petitioner's counsel was more credible than Petitioner the state courts had to "believe that an attorney who had concluded the case nine years prior to his testimony, who had no access to his old case file, and who professed not to remember countless details, nevertheless recalled with specificity what he told [Petitioner] to convince him to plead guilty." Filing No. 51 at 27-28. He points out that, while trial counsel testified that he spoke multiple times with Petitioner about pleading guilty, the record establishes he took steps to prepare to go to trial. *Id.* at 28. He argues that, while trial counsel testified he never had difficulties communicating with Petitioner, the record establishes he did. *Id.* He contends that trial counsel testified the terms of the plea agreement were well settled before the plea hearing, but that "hand-written changes on the Second Amended Information[,] suggest[] otherwise." *Id.* He notes that, during trial counsel's testimony, counsel admitted he was "speaking in generalities" about how he counselled Petitioner by "guessing what he must have done in [Petitioner's] case based on what he did with all his other clients." *Id.* at 29. Finally, Petitioner argues that, while trial counsel testified that he would have filed a motion to withdraw Petitioner's plea prior to sentencing if Petitioner had indicated prior to sentencing that he wished to do so, trial counsel did not file a motion to withdraw when Petitioner stated he wished to do so in open court prior to the pronouncement of sentence. *Id.*

Section 2254(d)(2) requires that this Court accord the state trial court's findings with substantial deference. *Wood v. Allen*, 558 U.S. 290, 301 (2010). And, when a court makes a credibility determination, Section 2254(d) "gives federal habeas courts no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Perry v. Kemna*, 356 F.3d 880, 885 (8th Cir. 2004) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). As such, Petitioner's argument that the state court should have credited his own testimony as opposed to the testimony of his trial counsel cannot provide him habeas relief here. *See also Starnes v. Roy*, No. 18-CV-618 (NEB/KMM), 2020 WL 888702, at *3 (D. Minn. Feb. 24, 2020) (making the same finding).

When directly confronted with the testimony of Petitioner and trial counsel, the state district court determined trial counsel was more credible. This finding was affirmed by the state court of appeals. There is little ground for this Court to redetermine these credibility findings, especially as this Court may not simply characterize state-court factual determinations as unreasonable, even if this Court would have reached a different conclusion in the first instance. *Allen*, 558 U.S. at 301. Put another way, even where "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)). While this Court notes that Petitioner points to some aspects of trial counsel's testimony which could be interpreted differently, and that trial counsel's testimony was presented via deposition instead of live testimony before the court, this Court shall not substitute its judgment for a court which directly considered and determined credibility without more than Petitioner now presents.

For these reasons, this Court finds that Petitioner cannot meet the performance prong of *Strickland* and, therefore, Claim One, Subparts (2) through (4) must be denied.[17]

**2. Claim Two - the remaining portions of Subparts (1) and all of Subpart (2)**

The parties agree that the portion of Claim Two, Subpart (1), addressing claims that trial counsel was ineffective for failing to investigate potential defenses, and all of Subpart (2), addressing a claim that trial counsel was ineffective for failing to interview relevant witnesses, are properly before this Court as exhausted on their merits.[18] *See* Filing No. 48 at 17-18. Ultimately, however, these claims fail for the same reasons Claim One, Subparts (2) through (4) did: these claims were raised and considered solely in support of Petitioner's attack on the district court's credibility findings relating to his trial counsel.

In denying the Remanded PCM, the district court specifically found that trial counsel did pursue reasonable investigation prior to advising Petitioner to enter a plea as follows:

> Trial counsel deposed both of the victims and in the depositions, they both acknowledge that they identified [Petitioner] out of a photo lineup. Trial counsel also filed a motion to suppress identification, which was overruled January 5, 2011. Trial counsel also testified that [Petitioner] never gave him a defense to pursue, including alibi, which is discussed in greater detail below. Also, he went of [sic] the reports and the surveillance video showing [Petitioner's] vehicle at the time of the shooting with [Petitioner], so [Petitioner] was aware of the evidence he was facing.

[17] Although the state court in Petitioner's case also determined that Petitioner was unable to establish prejudice, such a finding is irrelevant as to succeed Petitioner must establish both inadequate performance and prejudice as a result. *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir.2009) (quoting *Strickland,* 466 U.S. at 687) (a petitioner must prove both prongs of the Strickland analysis to prevail). While Petitioner also argues that the state court utilized the incorrect standard when determining prejudice under *Strickland*, this Court need not address the prejudice portion of *Strickland* here to deny the claim.

[18] Although specific claims addressing the failure to adequately investigate potential defenses and failure to interview witnesses were not specifically raised in Petitioner's Direct Appeal, the district court found trial counsel's investigation to be part of the remand mandate. Filing No. 40-22 at 353.

One specific allegation[ ] with regard to failing to investigate was the counsel failed to look into an alibi defense, which involved [Petitioner's] girlfriend. Trial counsel explained [Petitioner] never provided any alibi witnesses prior to trial and further, an alibi was never an issue that needed to be investigated:

> No. In fact, that was never - - as I stated before, early on, [Petitioner] had told me before depositions were even taken that he was involved in this and that it was a mistake, that he thought the three kids he shot at were someone that they weren't. He thought them to be someone other than Biggs and Betts. That was early on in the process. So it wasn't an issue of an alibi. That was never on the table. So - - and I never discussed that this [sic] his girlfriend, no.

Despite being from an opinion affirming the dismissing of a postconviction without an evidentiary hearing, the following from *State v. Seeger*, 20 Neb. App. 225, 822 N.W.2d 436 (2012) (emphasis added), is helpful in resolving [Petitioner's] claim:

> In his postconviction motion, Seeger alleged his trial counsel was ineffective for failing to investigate the facts of the case, consult with Seeger on strategy decisions for critical aspects of the case, interview the victims, use an investigator, request independent forensic testing of physical evidence, find evidence to rebut the State's forensic evidence, request independent testing of the sexual assault kits, request independent DNA testing, raise the issue of whether the victims were competent to testify, obtain sexual assault examination reports, and obtain reports of the examination of a laptop computer and some memory cards. But, Seeger's postconviction motion did not allege any facts showing what additional evidence would have been gathered, how a different result would have been obtained, or why there was a reasonable probability that Seeger would have insisted on going to trial rather than accept a plea agreement that dismissed four felonies. Self-serving declarations that a defendant would have gone to trial will not be enough; a defendant must present objective evidence showing a reasonable probability that he or she would have insisted on going to trial. *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011). The district court did not err in failing to grant an evidentiary hearing on these issues.

Similarly here, the facts alleged by [Petitioner] relating to counsel's failures are generic, do not state what additional evidence would have been

> gathered, or how it impacted his ultimate decision to enter a plea rather than go to trial. Petitioner also failed to produce any evidence as to what investigation should have been taken or what exculpatory evidence would have been found. Moreover, [Petitioner] admitted to trial counsel that he in fact committed the shooting, but did not mean to shoot these particular victims, so exculpatory evidence could not be produced. Considering the lack of evidence and the testimony from trial counsel, the Court finds [Petitioner] failed to prove counsel was deficient with regard to investigation of his case.

Filing No. 40-22 at 352-53 (internal docket citations and emphasis omitted).

In his Remanded PCM Appeal, Petitioner argued that the state district court abused its discretion by denying relief on the remanded claim which had initially been raised in his Direct Appeal, *see* Filing No. 40-13 at 22-23, addressing only trial counsel's performance relating to Petitioner's acceptance of the plea. Specifically, Petitioner argued that the district court's finding that trial counsel was more credible than Petitioner was erroneous. *Id.* at 12–25. *In support of his attack on the district court's credibility finding*, Petitioner argued that the state district court failed to consider all the ways trial counsel failed to adequately prepare for and investigate Petitioner's case, including failing to provide Petitioner with proof that the victim's depositions were taken, failing to depose Henley and Greene, failing to keep Petitioner informed as to the status of his case, failing to have DNA retrieved, failing to have medical exams performed on the victims, failing to inform Petitioner that going to trial would allow him to appeal the denial of the motion to suppress, failing to be forthcoming about the amended information, failing to give Petitioner adequate time to make a decision about making a plea, failing to accurately inform Petitioner of the consequences of making a plea, and erroneously promising Petitioner a sentence reduction if he entered a plea. *Id.* at 17.

On appeal, despite Petitioner's contention, *see* Filing No. 53 at 51 (alleging the state appellate court refused to consider his investigative claims as outside the mandate of the Partial Remand Order), the state appellate court referenced the district court's findings regarding trial counsel's investigation prior to advising Petitioner to accept a plea, elaborating as discussed in regards to Claim One, Subparts (2) through (4), *supra*, that the district court's credibility findings were not made in error. While the Court need not reiterate verbatim the state appellate court's findings, in summary, the appellate court found that the district court did not commit clear error in finding the testimony of Petitioner's trial counsel to be credible and that trial counsel's performance had not been substandard. Filing No. 40-6 at 6.

Again, the state court's credibility findings are beyond the reach of this Court. Trial counsel testified that he had a reason for not interviewing Greene and that he did perform an investigation into the allegations against Petitioner, and the district court found his testimony to be more credible than Petitioner's. Moreover, trial counsel's credibility directly related to the state court's finding that trial counsel had provided adequate counsel when advising Petitioner to accept the plea under *Strickland*. There is no basis for this Court to revisit those findings.

Moreover, even if this Court could look beyond the state court's credibility findings, as noted by the state appellate court, a court presumes trial counsel's decisions not to interview certain witnesses and other investigatory decisions were strategy decisions. *See* Filing No. 40-6 at 5. This is so as under *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). A decision is not "strategic" however, unless it is a conscious deliberation between legitimate and rational alternatives, not happenstance, inattention, or neglect. *See Wiggins v. Smith*, 539 U.S. 510, 526 (2003) (concluding that counsel's "failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment"); *Strickland,* 466 U.S. at 690-91. Therefore, the appropriate focus when addressing the performance prong has been described as the need to consider the basis supporting defense counsel's decision and not just the decision itself. *See Wiggins*, 539 U.S. at 523.

The state district court made such a determination when finding trial counsel's investigations and decisions not to depose specific individuals were reasonable. For example, trial counsel testified that because Petitioner admitted that he shot the victims there was no need to interview potential alibi witnesses. *See* Filing No. 40-22 at 352-53. While Petitioner denies that he admitted to his counsel that he was present when the victims were shot, the district court believed trial counsel's statement that Petitioner admitted to being there. This is the same credibility issue previously addressed which this Court shall not disturb. And, as the state appellate court cited specifically to the deference afforded to strategic decisions of trial counsel when affirming the district court's decision, there was certainly no misapplication of law. *See* Filing No. 40-6 at 5.

Finally, even if this Court were to consider these claims as stand-alone claims of failure to investigate and failure to interview witnesses,[19] and even if Petitioner could meet

[19] Petitioner also argues that these same alleged failures of trial counsel do not meet the ABA standards for "reasonable" investigations. Filing No. 51 at 35-36. However, even if trial counsel did not meet the cited ABA standards, Petitioner does not cite to any federal law requiring compliance with such standards.

the performance element, these claims would still fail on the prejudice prong of *Strickland*. For example, "[t]o establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994)). While Petitioner argues that investigative efforts "could have yielded 'potential avenues of impeachment of prosecution witnesses, and other possible suspects and alternative theories' that could have generated a reasonable doubt at trial", *see* Filing No. 51 at 37, such allegations are not nearly enough to establish prejudice.

For these reasons, this Court finds that Petitioner is not entitled to relief on any portion of Claim Two before this Court on their merits and Claim Two must be dismissed.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The court has applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1. The Amended Petition for Writ of Habeas Corpus, Filing No. 43, is denied and dismissed with prejudice.

2. The Second Motion seeking evidentiary hearing, Filing No. 68, is denied and dismissed with prejudice as moot.

3. No certificate of appealability has been or will be issued.

4. Judgment will be issued by separate document.

Dated this 16th day of September, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court